*648 This corporate income tax case is before the court on the plaintiffs motion for partial summary judgment and the defendant’s cross-motion for partial summary judgment. Oral argument has been had.
Inland Steel is an accrual basis taxpayer, which seeks to deduct liabilities accrued in the taxable calendar years 1964 and 1965, and incurred under a Supplemental Unemployment Benefit (SUB) Plan set up pursuant to a collective bargaining agreement with the United Steelworkers of America, dated April 6, 1962. The deductibility of accruals under the SUB Plan for calendar years 1962 and 1963 was before this court in Inland Steel Company v. United States, 212 Ct. Cl. 558, 76-2 U.S.T.C. ¶9791 (1976).[1] Under the SUB Plan, part of a company’s obligations to the Plan had to be met with cash payments to the trust; the other part of the obligations, called "contingent liability,”[2] were accrued as a liability of the company and were noncancellable; they did not have to be funded except to the extent necessary to provide SUB benefits under the Plan after the funds in the trust were exhausted. The sole issue before the court in the prior action was whether the "contingent liability” obligations accrued under the 1962 SUB Plan met the "all-events” test under I.R.C. §461, when the amount of the obligation was fixed and absolute but the time of payment was indefinite. This court, relying on its decision in Washington Post Co. v. United States, 186 Ct. Cl. 528, 405 F. 2d 1279 (1969), nonacq. Rev. Rul. 76-345, 1976-2 C.B. 134, held that the "all-events” test had been satisfied and granted the plaintiffs motion for summary judgment. The plaintiff now seeks summary judgment in regard to accruals made under the SUB Plan for the 1964 and 1965 calendar years and argues that the issue is governed by the doctrines of stare decisis and collateral estoppel. The defendant recognizes that the question of the fulfillment of *649 the "all-events” test is controlled by the earlier Inland Steel decision (which defendant considers incorrect) but counters that in the taxable years from 1962 through 1965 it was possible to transfer part of the accruals under the SUB Plan to savings and vacation plans (a new such plan was started in 1964), that I.R.C. §404, which disallows deductions for accruals under deferred compensation plans, is therefore applicable, and that this issue was not raised in Inland Steel I. The plaintiff answers that there is no significant difference in the savings and vacation plans in force in the various years (except that the benefits are more liberal under the 1964 plan) and that Inland Steel I must have decided sub silentio that § 404 was not applicable.
We hold, first, that, as the Government concedes, Inland Steel I governs the "all-events” issue, and that plaintiff is entitled to summary judgment on that question both on the ground of collateral estoppel and on stare decisis. On the "all-events” question, defendant claims neither a change in the facts with respect to this taxpayer, nor in the law; accordingly, the matter is one for collateral estoppel. Commissioner v. Sunnen, 333 U.S. 591 (1948). As for the precedents, all courts which have faced the issue have decided the same way we did in Inland Steel I. See Lukens Steel Co., supra; Cyclops Corp. v. United States, 408 F. Supp. 1287 (W.D. Pa. 1976); Reynolds Metal Co., 68 T.C.943 (1977).
Whether defendant can maintain its defense under § 404 for the years 1964-1965 is more difficult. In resolving that problem it will be helpful to examine the 1962 Savings and Vacation (SV) Plan in comparison with the 1964 Revised Savings and Vacation (RSV) Plan.
Under the SV Plan of 1962, benefits were financed from a Financial Availability Account (FAA); accruals were made in the FAA at the rate of 3 cents for each hour worked by the employees of the company. In addition, accruals could be transferred from the SUB Plan to the SV Plan’s Financial Availability Account. Under the SUB Plan, if the amounts required to bring the SUB Plan to "maximum financing” were less than the maximum monthly obligation of the company during a given month, the difference between the maximum monthly obligation and the amount required to bring the Plan to maximum financing accrued (subject to certain limitations on amount) to the SUB Plan account; such accruals in excess of maximum financing were available for financing either *650 SUB Plan benefits or for transfer to the SV Plan’s Financial Availability Account if necessary to finance retirement and vacation benefits under the SV Plan.[3]
The SV Plan provided both benefits available on retirement and vacation benefits. A retiring employee would receive a week of vacation pay for every five years of continuous service prior to January 1, 1961. A system was also created for providing vacation benefits, in which an employee could be credited with up to one vacation unit (depending upon the number of weeks worked) for each two-year period. On each quarterly calculation date employees credited with one or more vacation units could become entitled to vacation benefits, which were allocated to employees in the order of their continuous service to the extent funding was available in the FAA; an employee was not entitled to a vacation benefit unless he had at least one vacation unit. Employees becoming entitled to vacation benefits could take the benefits as vacation during the current or succeeding calendar year or defer the vacation for more than two years from the time of entitlement or defer receipt of the benefit until retirement.
Extensive changes seem to have been made in the vacation and retirement benefits provided under the 1964 RSV Plan. Under that later plan the work force was divided in order of decreasing continuous service into two halves, a Senior Group and a Junior Group. It was intended that during a five-year period each member of the Senior Group would receive an Extended Vacation Benefit (EV), which was a monetary benefit equal to 13 weeks paid vacation less the employee’s regular paid vacation to which he was entitled on the basis of his years of service. On quarterly calculation dates a quota of 5% of the employees in the Senior Group was established in order of descending continuous service, and EV were allocated to those employees to the extent of available finances in the FAA. There was also a system of Single-Week Vacation Benefits (SWV), equivalent to vacation pay for a week. For the first cycle the allocation of the SWV was in accordance with a priority list in order of descending continuous service of all employees with two or more years of continuous service, but for the second and third cycles of SWV during a five-year period the list was limited to employees in the Junior *651 Group. On each quarterly calculation date the balance of the FAA was allocated first to provide for as many EV as possible to satisfy the quota of 5% of the Senior Group, and the balance was used to provide for SWV.
There were a number of provisions in the 1964 RSV Plan providing benefits for employees upon retirement. An employee in the Senior Group who retired during a five-year period before he became entitled to an EV under the quota system was given an EV Retirement Benefit equivalent to an EV (but the base period for calculating the pay was changed), and the benefit was payable at the time of retirement. Also, an employee in the Senior Group who retired before becoming entitled to an SWV under the allotment system became entitled to an SWV upon retirement.
There were likewise several provisions for deferral of benefits until retirement. Employees in the Senior Group who became entitled to receive an SWV during the first cycle of the allotment procedure in a five-year period did not receive the benefit of that SWV until retirement. Employees in the Junior Group had the option of taking as a vacation any of the first three SWV to which they became entitled during a five-year period or of deferring the receipt of the benefit until retirement. Employees who were 63 or older as of the calculation date on which they were allocated EV also could elect to defer receipt of the benefit until retirement.[4]
In sum, the financing provisions of the 1964 RSV Plan, though analogous to the predecessor plan, seem to have been considerably altered, although the financing provisions of the SUB Plan itself were unchanged. Amounts in excess of the maximum financing under the SUB Plan could spill over to the FAA, subject to certain limitations. There were several innovations not in the prior SV Plan. Accruals in the FAA could be added to the SUB Plan, if the cost of providing benefits upon completion of the third cycle of SWV was less than the regular accruals of 12.5 cents per hour made in the FAA as of that time; also, some *652 of the accruals in the FAA at that time in excess of the amounts transferred to the. SUB Plan could be cancelled.
We cannot say at this point, given the numerous differences in the plans, that collateral estoppel is applicable to the defendant’s new issue of whether I.R.C. § 404 bars deductions of those accruals that could spill over from the SUB Plan to the RSV Plan. The doctrine applies, of course, only when there is no change in material facts or controlling legal principles. Commissioner v. Sunnen, supra, 333 U.S. at 598; accord, Food Machinery & Chemical Corp. v. United States, 177 Ct. Cl. 219, 223, 366 F. 2d 1007, 1008 (1966). Here, § 404 was not raised in Inland Steel I. But even if we assume arguendo that it was necessarily, though silently, involved in the earlier determination, the facts for 1964-1965 seem to us at least prima facie to be different. Although the SUB Plan was unchanged from the prior taxable years, the provisions of the SV Plan changed considerably as of January 1, 1964. For purposes of § 404, it could be that the RSV Plan and SUB Plan should not be separated; given the interlocking financing provisions of the two plans, they can be considered as subordinate parts of an overall plan for providing a wide spectrum of various employees’ benefits. Therefore, as we now see it, the defendant should not be barred at this stage by collateral estoppel from raising (and pursuing) the § 404 issue in this case.
On that issue stare decisis is also inapplicable. It is not clear that Latrobe Steel, supra, involved a substantially identical extended vacation plan. See note 4, supra. The financing provisions described in Cyclops Corp. v. United States, 408 F. Supp. 1287 (W.D. Pa. 1976), of that savings and vacation plan appear to be identical to the ones in the instant case; however, the court in that case appeared to rule against the defendant’s issue of whether I.R.C. § 404 barred deductions of the accruals under the SUB Plan that were available to the revised savings and vacation plan as much or more on the ground that the Government did not raise the issue until after trial as on the lack of persuasiveness of the issue. In the circumstances, the application of stare decisis recommended for fully litigated tax issues in Agway, Inc. v. United States, 207 Ct. Cl. 682, 696-97, 524 F. 2d 1194, 1202 (1975), does not seem appropriate for this case.
Taxpayer asks us, if we reject its claims of collateral estoppel and stare decisis, to pass upon the merits of the *653 Government’s § 404 issue on these cross-motions for summary judgment. However, the matter is complex and does not seem so clear to us at this point that we should take that course without further ventilation and screening of the facts, as well as further consideration of the legal issues in the light of all the relevant facts. The briefs and papers before us, as well as the oral argument, leave us with the distinct impression that we may not have all the pertinent facts and that it would be a mistake, both with respect to this individual case and with respect to other comparable cases now pending in this court, for us to decide the legal issues under § 404 without having all the relevant facts, properly marshalled and applied to the legal principles governing § 404.
IT IS THEREFORE ORDERED AND CONCLUDED that the plaintiffs motion for partial summary judgment is granted as to the "all-events” issue and as to the amounts accrued under the SUB Plan in 1964 and 1965 which were not available for use in paying out benefits under the RSV Plan, and is denied without prejudice insofar as the amounts accrued under the SUB Plan in 1964 and 1965 were available for use in paying out benefits under the RSV Plan.[5] The defendant’s cross-motion is denied without prejudice. The case is returned to the Trial Division for further appropriate proceedings.

 The SUB Plan provisions in the instant case are virtually identical to the provisions reported in Lukens Steel Co. v. Commissioner, 52 T.C. 764 (1969), aff’d, 442 F. 2d 1131 (3d Cir. 1971), nonacq. Rev. Rul. 72-34, 1972-1 C.B. 132.

 The nomenclature is a carry-over from the 1956 SUB Plan. Under that Plan, if the sum of the amounts in the trust fund and the accrued contingent liability exceeded the maximum financing on a monthly calculation date, there was a cancellation of the contingent liability to the extent of the overage; also, under the 1956 Plan, liabilities which had accrued, but had not been utilized by the termination of the Plan were cancelled. As a result of the 1962 steel industry negotiations, the accruals to the contingent liability account were made noncancella-ble; however, the terminology was continued to denominate those obligations under the Plan which did not have to be met immediately by cash contributions to the SUB Plan trust, except to the extent necessary to pay benefits.

 The financing provisions of Inland Steel’s SV Plan are almost identical to the provisions reported in Lukens Steel, supra.

 In Latrobe Steel Co. v. Commissioner, 62 T.C. 456 (1974), the Commissioner argued that under I.R.C. § 404(a) the company could not deduct accruals under its 13-week extended vacation plan. The court held that the taxpayer could deduct accruals under the plan. Although the plan in that case may have been analogous to the one in the instant case, it cannot be determined from the reported details whether they were substantially similar or not. The allocation provisions for determining the entitlement of employees to the extended vacations appear to have differed considerably. Also, the court in Latrobe Steel, supra, made no mention of SWV.

 Plaintiffs request for attorney fees is denied under Aparacor, Inc. v. United States, 215 Ct. Cl. 596, 571 F. 2d 552 (1978).