**CRUCIBLE INC.**

v.

**The UNITED STATES.**

No. 336–77.

United States Court of Claims.

Jan. 24, 1979.

Peter L. Briger, New York City, for plaintiff. Aydin S. Caginalp and Briger & Associates, New York City, of counsel.

Robert S. Watkins, Washington, D.C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D.C., for defendant. Theodore D. Peyser, Jr., and Jay G. Philpott, Jr., Washington, D.C., of counsel.

Before FRIEDMAN, Chief Judge, and KUNZIG and BENNETT, Judges.

## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

PER CURIAM:

The principal issue, in this case, here on cross-motions for summary judgment, is whether in its federal income tax returns the plaintiff properly deducted in the year of accrual amounts accrued under its 1962 Supplemental Unemployment Benefits ("SUB") Plan. For the reasons explained below, we grant in part and deny in part each motion for summary judgment, and remand the case to the Trial Division for proceedings in accordance with this opinion.

### I.

Crucible Steel Company ("Crucible Steel"), an accrual-basis taxpayer to which the plaintiff is the successor in interest,[1] was a steel manufacturer. In 1956 Crucible Steel, pursuant to a collective bargaining agreement with the United Mine Workers of America that covered the entire steel industry, agreed to make certain contributions to the SUB Plan. The plan was designed to supplement state unemployment benefits paid to laid-off employees in the industry. The collective bargaining agreement required Crucible Steel to make monthly contributions to the Plan based upon the hours worked by its employees. Crucible Steel funded the Plan through two accounts: (1) it made cash payments to the SUB Plan trust account, and (2) it credited amounts to an unfunded Contingent Liability Account. The collective bargaining agreement set a maximum amount that Crucible Steel was required to contribute to each account ("maximum financing limitations").

Following renewed industrywide negotiations, the SUB Plan was extended, with modifications, in 1962. Under the 1962 Plan, to the extent that the assets in the SUB Plan trust account were inadequate, Crucible Steel was required to use the Contingent Liability Account as a source of payments for SUB Plan benefits. Upon termination of the SUB Plan, any amount remaining in the Contingent Liability Account, together with the remaining trust account assets, would be used to pay SUB Plan benefits. Crucible Steel could not cancel amounts accrued to the Contingent Liability Account either upon termination of the collective bargaining agreement or upon permanent shutdown of the company's operations.

In addition to the SUB Plan, the 1962 industrywide collective bargaining agreement provided for a Savings and Vacation Plan ("S & V Plan"). Vacation benefits under that plan were funded through accruals to a Financial Availability Account ("Availability Account"), based upon the hours worked by each covered employee. If accruals to the Availability Account were insufficient to fund the S & V Plan, Contingent Liability Account accruals which exceeded maximum financing limitations could be used, up to a specified amount, for "spillover" to the Availability Account. The S & V Plan was revised in June 1963 to prohibit further spillover to the Availability Account of amounts in excess of maximum financing limitations which accrued to the Contingent Liability Account prior to 1964. Thus, after December 31, 1963, the total pre-1964 remaining accruals in the Contingent Liability Account could be used only to pay benefits under the SUB Plan.

In each of the years 1962 through 1967, Crucible Steel took a deduction in federal

---

1. Crucible Steel was dissolved in 1968.

income taxes for the total amounts accrued to the SUB Plan in that year. The Commissioner of Internal Revenue disallowed the deductions on the ground that the "all events" test which governs deductions for accrual-basis taxpayers (*see* II. A. *infra*) was not satisfied.

## II.

A. Section 162(a) of the Internal Revenue Code of 1954 (26 U.S.C. § 162(a)) permits the deduction of "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business . . . ." Deductions may be taken "for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income." 26 U.S.C. § 461(a). For an accrual-basis taxpayer such as Crucible Steel, the proper taxable year is that in which "all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy." Treas.Reg. § 1.461–1(a)(2) (1958).

In *Inland Steel Company v. United States,* 212 Ct.Cl. 558 (1976) (*"Inland I"*), we followed *Lukens Steel Company v. Commissioner,* 442 F.2d 1131 (3d Cir. 1971), *aff'g* 52 T.C. 764 (1969), and *Cyclops Corporation v. United States,* 408 F.Supp. 1287 (W.D.Pa. 1976), and held that the liability of another steel company to a virtually identical SUB Plan met the "all events" test so that the company's accruals to the plan were deductible in the year in which the Contingent Liability Account was credited. We pointed out that under the 1962 SUB Plan "the obligation of the plaintiff steel company to pay the amounts accrued by it as 'contingent liability' became fixed and absolute and determinable in amount when accrued" and that "[c]onsistent with the regulation and the concept of accrual accounting, uncertainty as to the time of payment is irrelevant once the fact and the amount of the liability are established." *Inland Steel Company v. United States,* 212 Ct.Cl. at 560.

In its briefs in this case, the defendant argued that *Inland I* was incorrectly decided and should be reexamined. It also urged that in any event the case should be remanded to the Trial Division for a trial to explore various factual differences between this case and *Inland I* which, in the defendant's view, would warrant a different result here. In oral argument, however, the defendant conceded, for purposes of this case, that amounts accrued to the SUB Plan which did not exceed maximum financing limitations and were not potentially available for spillover in the S & V Plan were deductible in the year of accrual. This concession was made contingent upon verification of the figures set forth in Schedule A to the supplemental affidavit of Edward Millward, which compared accruals to the SUB Plan with actual payment of SUB Plan benefits over a 10-year period. Plaintiff agreed to this verification.

There is no need for such verification under the "all events" test. Since, as we held in *Inland I,* the company obligation to pay the amount it accrued "became fixed and absolute and determinable in amount when accrued," there is no occasion to inquire about the amount and timing of the actual payments under the SUB Plan. For, as we ruled in *The Timken Company v. United States.* No. 395–76 (order entered August 11, 1978), "the tax treatment of plans which are indistinguishable in their terms" cannot vary because of "subsequent [payout] experience." However, if in this case the defendant wishes to verify the figures and the plaintiff consents, we see no reason why it should not be done. Accordingly, we grant summary judgment for the plaintiff on the "all events" issue, subject to verification on the remand of this case to the Trial Division as directed in II. B.

B. With respect to amounts accrued to the Contingent Liability Account that were in excess of maximum financing limitations, the defendant contends that section 404 rather than section 162(a) of the Code governs their deductibility. Section 404 provides that employer contributions to an employee's deferred compensation plan may be deducted only in the year of payment and not in the year of accrual. Defendant

argues that S & V Plans are deferred compensation plans under section 404(a); that any amounts in the Contingent Liability Account that actually spilled over to the S & V Plans or were potentially available for spillover should be treated as part of the S & V Plan; that all amounts in the Contingent Liability Account which reflect accruals in excess of maximum financing limitations potentially were available for such spillover; and therefore that deductions for such amounts could be taken only in the year in which those amounts were actually paid to the S & V Plan. Under this analysis, deductions for such amounts could be taken in the year of accrual only if the amounts were paid to the S & V Plans in that year.

Plaintiff responds that the S & V Plans are not deferred compensation plans and that, even if they were, section 404 would apply only to amounts actually spilled over, for which deductions were taken only in the year of payout. Plaintiff also argues that the S & V Plans and SUB Plans are essentially separate plans and that, in any event, once the "all events" test has been met, an earlier taxable year should not be reopened to adjust an accrual. Any appropriate adjustment due to a subsequent event, plaintiff argues, should be made, pursuant to Rev.Rul. 68–223, as an adjustment to income in the year of the subsequent event.

Plaintiff relies on two recent decisions, *Latrobe Steel Company v. Commissioner,* 62 T.C. 456 (1974), and *Cyclops Corporation, supra.* Neither of these two cases provides much guidance for, let alone indicates the proper disposition of, this case. The Tax Court in *Latrobe* did not consider all aspects of the company's S & V Plan and, as we concluded in *Inland Steel Company v. United States,* No. 481–76 (order entered May 19, 1978) (*"Inland II"*), it cannot be determined from the description of the plan under consideration in the *Latrobe* opinion whether that plan and the plans here under consideration were substantially similar. *Id.* at 5, n. 4. The district court in *Cyclops* held that the section 404 argument was untimely and therefore not properly before the court.

The United States made similar arguments in *Inland II,* which involved the determination of accruals to the SUB Plan for the 2 years subsequent to the accruals we approved in *Inland I.* There, as here, the government recognized that *Inland I* controlled the "all events" test, but argued that the possibility that accruals under the SUB Plan would be transferred to the S & V Plans made section 404 rather than section 162(a) the governing provision. The court rejected the plaintiff's claim that, under collateral estoppel and *stare decisis,* the decision in *Inland I* barred the government from litigating the section 404 issue. The court also rejected the plaintiff's request that it decide the merits of the section 404 issue on summary judgment. It ruled that "further ventilation and screening of the facts, as well as further consideration of the legal issues in the light of all the relevant facts" was necessary. It remanded the case to the Trial Division for "further appropriate proceedings" on this issue. *Inland Steel Company v. United States,* No. 481–76, at 7.

We conclude that the same course is appropriate here. We therefore deny the defendant's motion for summary judgment with respect to the section 404 issue and remand the case to the Trial Division for further proceedings on that issue.

■ C. The plaintiff contends that the defendant unjustifiably continued to litigate the "all events" issue after it had lost it in several courts and that the court therefore should award attorneys' fees under the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988. That section permits the award of attorneys' fees against the United States "in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code . . . .." In *Aparacor, Inc. v. United States,* 571 F.2d 552, 215 Ct.Cl. 596 (1978), we recently held that this provision does not apply to tax refund suits in this court. See also *Timken, supra.* Our decision in *Aparacor* controls here, and we decline plaintiff's suggestion that we should

re-examine it. We therefore grant the defendant's motion for summary judgment on the attorneys' fees claim.

D. The defendant has filed a motion to amend its answer to assert as an offset, against any recovery to which plaintiff may be entitled, any current deductions taken during the years in question which the government may have erroneously allowed under the S & V Plans for amounts not actually paid out during the year of the deductions. Plaintiff opposes the motion on various grounds, and alternatively argues that the defendant should bear the burden of proof to show that any S & V deductions were erroneously allowed. Since we are remanding the section 404 issue to the Trial Division, we believe that the Trial Division also initially should consider this motion and the plaintiff's argument concerning the burden of proof.

The plaintiff's motion for summary judgment is granted with respect to the "all events" issue, subject to verification, and denied in all other respects. The defendant's motion for summary judgment is granted with respect to the attorneys' fees issue and denied in all other respects, and its motion to amend its answer is referred to the Trial Division.