**Martha L. SARTIN, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 513–80T.**

United States Claims Court.

April 24, 1984.

Thomas E. Settles, Nashville, Tenn., for plaintiff. Tune, Entrekin & White, Nashville, Tenn., of counsel.

Robert N. Dorosin, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant.

## OPINION

MAYER, Judge.

Plaintiff Martha Sartin seeks a refund of income tax paid for 1975 based on allocations of loss, depreciation, and investment tax credit to her as a limited partner in a Tennessee limited partnership.

## FACTS

The Oaks Office Park partnership was formed in 1973 to construct and operate two garden style office buildings in Nashville, Tennessee. Construction was completed and the buildings were opened for tenant occupancy in mid-1974. The Oaks Office Tower partnership was formed in 1974 to construct and operate an eight-story office building. The building was substantially completed in June of 1975. On October 1, 1975, 95% of the rental space was under lease at Oaks Office Park and 55% of the rental space was under lease at Oaks Office Tower. Both Oaks Office Park and Oaks Office Tower were general partnerships with three general partners, Theodore Lightfoot, Robert Baltz, and Hardaway Construction Company, a partnership composed of L.H. Hardaway, Sr., and L.H. Hardaway, Jr. Each of the three general partners in both partnerships shared equally in profits and losses.

In 1975 both partnerships experienced financial difficulties and the partners concluded that the partnerships' survival was dependent upon raising additional capital by the sale of limited partnership interests in the office buildings. It was agreed on September 18, 1975, that a limited partnership, Oaks Office Complex, Ltd., would absorb the existing general partnerships and that the limited partnership would in turn sell the underlying land to a separate limited partnership for lease back.

The October 30, 1975, Oaks Office Complex, Ltd., prospectus called for four general partners: Lightfoot (17% interest), Baltz (17%), Hardaway Construction Company (17%), and Jacques-Miller Associates (1%). It disclosed that Lightfoot, Baltz, and Hardaway Construction had an aggregate

net worth of more than $6 million. The new limited partners would have an aggregate 48% interest in the limited partnership. The prospectus announced 607 limited partnership interests at $1,000 per unit, with a minimum purchase of five units.

Except for the 1975 tax year, the limited partners were to share the partnership income or loss in the same percentage as their ownership interests. For the 1975 tax year, the limited partners were to share among themselves, according to their respective interests, 99% of all partnership taxable income and expenses.

According to the prospectus, the Tower Office Building was subject to a first mortgage securing a construction loan for $3,450,000, and Oaks Office Complex, Ltd., had received a commitment for a permanent first mortgage loan of $3,450,000, payable over 30 years. Another $1 million had been borrowed to finance completion of the Tower Office Building. This loan was personally guaranteed by Lightfoot, Baltz, and Hardaway Construction Company, and was secured by a second mortgage on the property. The supplemental construction loan was to be repaid from the capital contributions of the limited partners in Oaks Office Complex, Ltd., and from the money received upon sale of the underlying land. The Oaks Office Park buildings were subject to a first mortgage of $1,060,000.

The merger of the two general partnerships into the Oaks Office Complex, Ltd., partnership was consummated by an agreement dated December 30, 1975. Forty-two limited partners, plaintiff included, contributed $607,000 to the partnership and were admitted on that date. Plaintiff purchased ten units, which was a 0.79% interest.

Of the $607,000 contributed by the limited partners, $80,124 was paid as a syndication fee to an affiliate of Jacques-Miller Associates for organizing and marketing the limited partnership. The $526,876 balance was used as partial repayment of the supplemental construction loan on the Tower Building.

The Oaks Office Complex partnership used the accrual method of accounting. Its 1975 tax return reported income of $251,-556 and expenses of $804,079, for a net loss of $552,523. The partnership allocated 99% of the loss, $546,998, to the limited partners pursuant to the partnership agreement. Plaintiff was given her 0.79% interest in that allocation.

The Internal Revenue Service (IRS) disallowed this retroactive allocation of the partnership losses to the new limited partners. It applied the proration method to allocate the 1975 loss according to the varying interests of the partners held during the year. The partnership allocated 99% of an investment tax credit on new section 38 property to the limited partners. The IRS reallocated the entire investment tax credit to the original three general partners because the property had been placed in service before the limited partners were admitted. The partnership also capitalized the $80,124 syndication fee as an additional cost of the Tower Building and depreciated it over the remaining 29 year useful life of the building. The IRS disallowed the amortization expense claimed for 1975.

When plaintiff filed her 1975 federal income tax return, she secured a refund based in part on her share of the same loss allocations and investment tax credit the IRS had disallowed the partnership. Having received a refund on this basis, she paid it back in anticipation of deficiency assessments which were forthcoming. She filed claims for refunds of the deficiencies paid, which the IRS denied. This suit followed and trial was held in Nashville, Tennessee.

## DISCUSSION

*Retroactive Allocation of Partnership Losses*

■ The first issue is whether plaintiff can deduct a proportional share of 99% of the partnership's entire year's loss despite being a limited partner for only the last two days of the partnership's tax year. This is similar to the situation in *Richardson v. Commissioner*, 76 T.C. 512 (1981), *aff'd*, 693 F.2d 1189 (5th Cir.1982), where the Tax Court considered the validity of a

99% allocation of an entire year's loss to limited partners joining a failing partnership with one day remaining in the partnership tax year.

The court held that the purchase of the limited partnership interests invoked I.R.C. § 706(c)(2)(B), which prohibits a retroactive allocation of partnership loss to new partners, regardless of the terms of the partnership agreement which would otherwise govern. *See id.* § 704. Primarily relying on the Report of the Joint Committee on Taxation discussion of a clarifying amendment to section 706(c)(2)(B) * in the Tax Reform Act of 1976, Pub.L. No. 94–455, 90 Stat. 1520, the court said that the law prior to 1976 also required an allocation of partnership items in accordance with the partners' varying interests during the year. *See* 76 T.C. at 524. Therefore, in that case the limited partners who entered the partnership on December 30, 1974, were limited by section 706(c)(2)(B) to 99% of the losses incurred on the last day of 1974.

*Richardson* is not alone. Courts uniformly have concluded that the amendment of section 706(c)(2)(B) did not change prior law about retroactive allocations, it merely clarified the existing rule prohibiting them. *See, e.g., Snell v. United States,* 680 F.2d 545 (8th Cir.1982); *Williams v. United States,* 680 F.2d 382 (5th Cir.1982); *Mahoney v. United States,* 229 Ct.Cl. 794 (1982) (order). The soundness of these holdings is not undermined by plaintiff's argument that the law was otherwise before 1976.

In 1975, section 706(c)(2)(B) said the taxable year of a partnership does not close, other than at the end of the partnership's taxable year, for a partner who sells or exchanges less than his entire interest in the partnership or for a partner whose interest is reduced. Rather, the partners' distributive share of income or loss of the partnership is determined by their varying interests in the partnership during that year. The varying interest rule requires those who were partners before a change in partnership interests to report their distributive shares of income or loss for the earlier period. Similarly, it requires partners after a change in partnership interests to report their distributive shares for the subsequent period. It does not permit retroactive reassignment of the interests.

■ This is consistent with the income tax principle that assignment of income or loss is prohibited. Income is taxed to the partnership or individual who earned it and losses are deductible only by the partnership or individual who sustained them. *See United States v. Basye,* 410 U.S. 441, 447, 93 S.Ct. 1080, 1084, 35 L.Ed.2d 412 (1973); *Helvering v. Horst,* 311 U.S. 112, 119, 61 S.Ct. 144, 148, 85 L.Ed. 75 (1940). Therefore, Oaks Office Complex, Ltd., cannot retroactively allocate 1975 losses sustained by the three original general partners to the limited partners who joined on December 30, 1975, and plaintiff may not base her deduction on that action.

*Postponement of Accrual*

Traditionally, partners' shares of partnership items can be calculated by either of two methods, interim closing of the books, chosen here, or a prorated allocation of the total year's income or loss of the partnership. Under proration, the year's income or loss items are allocated to the partners according to both their percentage interest and the number of days they owned interests in the partnership. Under the interim closing of the books method, the partners are given their percentages of interest in all items proven to have accrued during the period of their ownership. However, they bear the significant burden of establishing

---

* With the 1976 clarifying language bracketed, in 1975 this section provided:

> (B) Disposition of less than entire interest. —The taxable year of a partnership shall not close (other than at the end of a partnership's taxable year as determined under subsection (b)(1)) with respect to a partner who sells or exchanges less than his entire interest in the

> partnership or with respect to a partner whose interest is reduced [ (whether by entry of a new partner, partial liquidation of a partner's interest, gift, or otherwise) ], but such partner's distributive share of items described in section 702(a) shall be determined by taking into account his varying interests in the partnership during the taxable year.

through accepted accounting methods the date of accrual for each partnership item claimed. Nevertheless, the partners could use either these or any other reasonable method of computing partnership income or expense items. *See Richardson v. Commissioner*, 76 T.C. at 526.

Treas.Reg. § 1.461–1(a)(2), applicable to taxpayers using the accrual method of accounting, says that "... an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy." Plaintiff argues that the bulk of the deductible expenses of the partnership for tax year 1975 did not accrue to the partnership until December 30 and 31, 1975, the only days that year on which the limited partners owned interests in the partnership. The essence of this argument is that the original general partners did not have the cash to repay the $1 million supplemental construction loan and therefore were "not at risk" for that debt. On the other hand, the limited partners were at risk for it after making the capital contributions to partially repay it. Because the partnerships did not have the financial capacity to pay, accrual of that expense had to be deferred until capacity was achieved.

The record shows, however, that most of the operation and construction expenses for 1975 pertaining to the Tower Office Building were incurred during the period January 1 to December 29. During that same period, the Oaks Office Tower general partnership used its own equity capital from building rentals and cash from the $3,450,000 construction loan and the $1 million supplemental construction loan to pay these expenses. Under the accrual method of accounting, it is not relevant that the general partners did not have the liquid assets to repay the supplemental construction loan or that the new money contributed by the limited partners was used to repay it. The same argument was made and rejected in *Williams v. United States*, where the court said that none of the equity capital contributed by the incoming part-

ners generated the losses before their entry and until they came in the existing partners provided the equity capital and were liable for any losses then incurred. That was the "economic reality" of the situation and the new partners were not entitled to deduct pre-existing expenses. 680 F.2d at 387.

Plaintiff cites two cases in support of her proposition. The first, *Tampa & Gulf Coast Railroad Co. v. Commissioner*, 56 T.C. 1393 (1971), *aff'd*, 469 F.2d 263 (5th Cir.1972), involves the right of a corporate bond issuer on the accrual basis to deduct the interest payable on the bonds in light of the fact that the issuer had not actually made an interest payment for 30 years. *Tampa & Gulf Coast*, however, does not help plaintiff. That case acknowledged that a taxpayer's inability to pay an otherwise accrued expense does not prevent the accrual. "Petitioner argues the proposition that inability to pay interest obligations is not of itself of sufficient reason to prevent accrual and deduction. This is true.... In fact, a taxpayer on the accrual basis must deduct an expense when the taxpayer becomes in all events liable to pay it, whether or not it is actually paid, or the taxpayer will lose the deduction altogether." 56 T.C. at 1400. The court's denial of the interest deduction was based on a finding that the bond obligation of the taxpayer was not a bona fide debt, not the concept of deferred accrual.

The other case, *Cuba Railroad Co. v. Commissioner*, 9 T.C. 211 (1947), did permit a taxpayer to postpone accrual of income from an obligation of the Cuban government when under Cuban law the obligation owed could not be paid. Central to the ruling was the court's finding that the taxpayer had an unenforceable claim because under Cuban law no judgment against the government could be enforced unless the budget specifically provided for payment. Concluding that collection of the debt was at the mercy of Cuban politics, the court held the taxpayer was not obligated to accrue the income because there

was real doubt that the debt would ever be paid. *Id.* at 215.

In this case, there is no evidence that the expenses incurred by the partnership could not have been satisfied, by resort to judgment if necessary. Indeed, the $4.45 million loan to the partnership was fully secured by deeds of trust on the properties. And the general partners, with a combined net worth in excess of $6 million, personally guaranteed the $1 million supplemental construction loan. The trial testimony presented to cast doubt on the financial viability of the partners in 1975 was equivocal and unpersuasive, especially in light of the simultaneous declaration in the prospectus proclaiming their financial strength. This detracts from any claim of uncertainty over whether these obligations could have been satisfied. In addition, the depreciation of $171,697 claimed to have accrued on December 31, 1975, can hardly be deemed an "unenforceable" expense prior to that date. Depreciation is not an out-of-pocket expense.

■ Courts have consistently recognized that an accrual basis taxpayer must accrue expenses upon maturity of both the liability and the amount, *see, e.g., Crucible, Inc. v. United States*, 591 F.2d 643, 645, 219 Ct.Cl. 124 (1979); *Washington Post Co. v. United States*, 405 F.2d 1279, 1283, 186 Ct.Cl. 528 (1969); *Keebey's Inc. v. Paschal*, 188 F.2d 113 (8th Cir.1951), even if it may never be paid because of insolvency, *see Fahs v. Martin*, 224 F.2d 387, 393 (5th Cir.1955). Unless it can be definitively concluded that a debt will never be repaid, even if the likelihood of repayment is doubtful, a taxpayer debtor must accrue the deduction. *See Cohen v. Commissioner*, 21 T.C. 855, 857 (1954); *Jorden v. Commissioner*, 11 T.C. 914, 925 (1948). The general partnership predecessors to Oaks Office Park, Ltd., were required to accrue expenses as of December 29, 1975. They may have been in a weak financial condition, but they were going concerns.

Plaintiff argues that the general partnerships' creditors would not have been able to accrue as income items the partnerships owed because of their doubtful collectibility. Therefore, their expenses should not accrue either. She relies on the asserted inability of the general partners themselves to repay the loan. But the record shows that as of December 29, 1975, it was reasonably certain that the supplemental construction loan would be repaid from the limited partners' capital contributions and the proceeds from the sale of the underlying land. As of that date, the creditor could reasonably expect repayment in the regular course of business. *See Harmont Plaza, Inc. v. Commissioner*, 64 T.C. 632, 649–51 (1975), *aff'd*, 549 F.2d 414 (6th Cir. 1977); *Corn Exchange Bank v. United States*, 37 F.2d 34 (2d Cir.1930).

*Deductible Partnership Expenses*

Plaintiff alternatively argues that $380,-887 of the $804,079 in partnership expenses properly accrued on December 30 and 31, 1975, and that the limited partners are entitled to deduct 99% of that amount. Recourse to the partnership records should show which expenses properly accrued and when. Accrual of an expense must be determined by applying generally accepted accounting principles and ignoring plaintiff's "delayed" or "deferred" accrual position.

■ A taxpayer bears the burden of establishing a claimed deduction by records which fix both the time and amount of each income and expense item. Deductions are discretionary with Congress and are only allowed when entitlement is clearly proven. *See Commissioner v. National Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 149, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717 (1974). "The consequence of lack of evidence on a material element of the deduction is that the taxpayer's claim is to be rejected." *L.W. Hardy Co. v. United States*, 1 Cl.Ct. 465, 470 (1982), *citing, Burnet v. Houston*, 283 U.S. 223, 228, 51 S.Ct. 413, 415, 75 L.Ed. 991 (1931).

At trial, plaintiff presented two sets of records in support of her claim to deductible expense items and her assertion of accrual on December 30 and 31, 1975. The

first set was the general ledgers for Oaks Office Park and Oaks Office Tower. Examination of these ledgers shows monthly compilations of partnership income and expenses, not a daily record of income and expense accrual. Without a daily itemization, the interim closing of the books accounting method is frustrated. The general ledgers are insufficient to establish the specific accrual dates of partnership items.

In a further attempt to establish the accrual dates for the expenses, plaintiff introduced check stubs from the partnerships purportedly showing when the expense items were paid. But, this evidence does not establish their accrual. Contradictorily, this treats the accrual basis partnerships as if on a cash basis.

■ Nevertheless, plaintiff is entitled to recover a portion of the 1975 partnership loss under the prorated allocation method. In its examination report on the Oaks Office Complex, Ltd., tax return, the IRS proposed adjustments to the partners' tax liability based on a proration of the partnership net loss for the entire year. Under this allocation, plaintiff is entitled to a proportion of 99% of the partnership's loss multiplied by her interest, 0.79%. Use of a prorated allocation is acceptable in cases like this. *See* Treas.Reg. § 1.706–1(c)(2); *Richardson v. Commissioner*, 76 T.C. at 525; *Moore v. Commissioner*, 70 T.C. 1024, 1035 (1978).

Plaintiff claimed that six items accrued as of December 31, 1975: depreciation, loan commitment fees, loan expenses, property taxes, interest expense, and property insurance. Using the proration method, each of these must be amortized over their appropriate periods and plaintiff would then be entitled to her share of the prorated amount.

As for depreciation, no evidence was presented about when depreciable property was placed in service. It was, therefore, reasonable to assume, as defendant's expert did, that all of it was placed in service on or before January 1, 1975. Accordingly, 2/365 of that amount is allocable to the period of plaintiff's interest.

Similarly, the commitment fees and loan expenses must be amortized over the life of the loans and plaintiff would receive her share of the two days' proration. Property taxes and property insurance would be prorated over the year and the interest expense for December would be prorated for the month, and allocated to the two days accordingly.

Notwithstanding its sponsorship of the prorated allocation, defendant also says that $598,391 of deductions attributable to the Oaks Office Tower partnership could not be substantiated because only a general ledger was available for audit. No cash receipts and disbursement journal, paid bill files, or unpaid bill files of the partnerships were available to trace the monthly postings in the Tower general ledger. To overcome this unexplained deficiency, plaintiff submitted check stubs for all of the partnerships in no particular order at trial. Plaintiff apparently intended this as substantiation for the deductions, while defendant says that without formation of a simulated cash disbursements journal for the Tower from the check stubs one cannot confidently verify the deductions. One of plaintiff's witnesses explained a few of the items reflected on both check stubs and the general ledgers, but defendant's expert said he could not have traced the check stubs to the ledgers without great difficulty, expenditure of time, and the assistance of the bookkeepers.

Since neither of the parties saw fit to trace the items or prepare a simulated cash disbursements journal because of the difficulty, the court would not do it for them, assuming it was able to in light of defendant's expert's testimony. Fortunately, however, it is not necessary. Even without verification, defendant has allowed plaintiff a greater deduction administratively than she has established through this suit. Resolution of this issue will not change the outcome and need not be undertaken.

*Investment Tax Credit*

Plaintiff argues that a major portion of the partnership's I.R.C. § 38 investment

tax credit for new property accrued on December 30 or 31, 1975, and she is, therefore, entitled to a proportional share of the credit. Specifically, plaintiff alleges that $88,876 of a total section 38 credit of $114,973 accrued to the partnership during the last two days of the partnership tax year. However, at trial she produced no documentary evidence of when the investment tax credit property was "placed in service." *See* I.R.C. § 46(c)(1).

■ Examination of section 38 and its companion section 46 compels the conclusion that plaintiff is not entitled to any portion of the section 38 investment tax credit for property placed in service in 1975. As a general rule, a section 38 credit, as computed by section 46, is allocated to partners according to the ratio by which they would share the partnership's yearly profits. This allocation method applies for taxable years in which there is no change in the ratio. *See* Treas.Reg. § 1.46–3(f)(2)(i).

■ A different method of allocation applies, however, when the ratios for sharing profits among the partners changes during a tax year, as in our case. Under these circumstances, the credit is allocated according to the profit sharing ratios in effect on the date the section 38 property is "placed in service." *Id.* § 1.46–3(f)(2)(i); *see also id.* § 1.46–3(f)(3). Since the ratios for sharing profits among the partners changed on December 30, 1975, the principles set out in section 1.46–3(f)(2)(i) control and the date on which the property was placed in service becomes dispositive. There is no evidence of that date, much less evidence that it was either December 30 or December 31, 1975. Absent proof, the court cannot speculate. Plaintiff bears the burden of establishing both the date and the amount of the credit claimed. *See Commissioner v. National Alfalfa Dehydrating & Milling Co.*, 417 U.S. at 149, 94 S.Ct. at 2137; *L.W. Hardy v. United States*, 1 Cl.Ct. at 470. Plaintiff may not have any of the investment tax credit.

*Amortization of Syndication Fee*

■ In 1975, the partnership paid a syndication fee of $80,124 for organizing and funding Oaks Office Complex, Ltd. The partnership capitalized the payment and began with the 1975 return to amortize it. The IRS disallowed this treatment of the syndication fee saying it is a capital expense not subject to depreciation. Plaintiff rejoins that the partnership accrued the entire amortizable expense on December 31, 1975.

Plaintiff relies on *Blitzer v. United States*, 684 F.2d 874 (Ct.Cl.1982), which permitted a partnership to amortize over its 50 year life a portion of the syndication fee allocable to the organization and syndication of its shares. Other portions of the syndication fee were allowed to be amortized over the lives of certain assets, including apartment units and a loan. *Id.* at 892.

Defendant acknowledges *Blitzer* but argues that it was wrongly decided. Further, defendant says plaintiff has not identified a tangible asset with a useful life supporting amortization. Defendant cannot prevail on either point. First, this court is bound by *Blitzer*, and has no authority to overrule it. *Shafer v. United States*, 1 Cl.Ct. 437, 438 (1983). Second, plaintiff has identified one of the partnership's office buildings, a tangible asset with a useful life related to the syndication fee. The claim to amortization is legitimate. However, plaintiff has not established the syndication fee accrued on December 31, 1975, so the court will allocate to plaintiff her prorated share of that year's amortization of the syndication expense.

## CONCLUSION

Because the IRS has already allowed plaintiff a deduction in excess of what she would receive from this suit, as arithmetic calculation in accordance with this opinion shows, she is entitled to no recovery and judgment will be entered for defendant.

It is so **ORDERED.**