JOHN K. JOHNSEN AND FRANCES JOHNSEN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 12592–80.     Filed March 4, 1985.

*Donald W. Geerhart* and *Donald J. Forman,* for the petitioners.

*Sara M. Coe,* for the respondent.

SUPPLEMENTAL OPINION

SIMPSON, *Judge*: On July 24, 1984, this Court filed its opinion (83 T.C. 103) determining the issues in this case and withheld entry of its decision for the purpose of permitting the parties to submit computations under Rule 155, Tax Court Rules of Practice and Procedure.[1] The parties submitted conflicting computations. On November 21, 1984, we entered our decision, adopting the Commissioner's computation that there was a deficiency of $2,698 in the income tax due from the petitioners for the taxable year 1976. The petitioners, John K. and Frances Johnsen, have moved to vacate the decision. We held a hearing on such motion in Washington, D.C., at which representatives for both parties appeared and presented their opposing arguments. Mr. Johnsen will sometimes be referred to as the petitioner.

In our prior opinion, we held that under section 212(1) or (2) of the Internal Revenue Code of 1954,[2] the petitioner was entitled, as a limited partner in Centre Square III, Ltd. (the limited partnership), to deduct his distributive share of a construction loan commitment fee, a portion of a permanent

[1]Any reference to a Rule is to the Tax Court Rules of Practice and Procedure.

[2]All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue.

loan commitment fee,[3] and a $50,000 management and guarantee fee incurred by the limited partnership during 1976. Because the limited partnership was formed on April 11, 1976, and the petitioner did not acquire his limited partnership interest until July 19, 1976, we also held that, under section 706(c)(2)(B), the petitioner must adjust his distributive share of the limited partnership's deductible items to reflect his varying interest in the limited partnership. However, we did not decide what method was to be employed in adjusting the petitioner's distributive share.

The Commissioner bears the burden of proof with respect to the varying interest (or retroactive allocation of loss) issue because he raised it first in an affirmative allegation in his answer. Rule 142(a). In his post-trial brief, the Commissioner indicated that any reasonable method of allocating the limited partnership's deductions to the portion of the limited partnership's 1976 taxable year during which the petitioner was a partner would suffice. He utilized the proration method in his Rule 155 computation, calculating the petitioner's distributive share on the basis of his having been a limited partner for 165 days of the limited partnership's 263-day 1976 taxable year.[4]

In their motion to vacate, the petitioners argue that the Commissioner's burden of proof with respect to the varying interest issue extends to proving the method of accounting for Mr. Johnsen's varying interest which is most favorable to them. They maintain that the application of the interim closing of the books method results in no downward adjustment in his distributive share of the limited partnership's

---

[3]The limited partnership claimed a deduction of $50,760 for fees charged for a permanent loan commitment and an extension of the permanent loan commitment. We disallowed a portion of the permanent loan commitment fee because such fee was excessive and, therefore, was not an ordinary and necessary expense.

[4]The Commissioner calculated the petitioner's distributive share of the limited partnership's deductible items as follows:

Partnership loss .................................................................................................$121,924
Petitioner's percentage interest in partnership............................................................4.95%
Length of partnership's 1976 taxable year (4/11/76 – 12/31/76) ...................................263 days
Length of petitioner's membership in 1976 (7/19/76 – 12/31/76)...................................165 days

4.95% $\times$ 165/263 $\times$ $121,924 = $3,786 (petitioner's share).

deductible items and that, therefore, it is the most favorable method.[5]

The proration method is the easier method to apply. It involves computing partnership income or loss at the end of the partnership year and allocating the yearend totals ratably over the year. The interim closing of the books method requires a closing of the partnership books as of the date of entry of the new partner and the computation of the various items of partnership income, gain, loss, deduction, and credit as of such date. See *Moore v. Commissioner*, 70 T.C. 1024, 1035 (1978); sec. 1.706–1(c)(2)(ii), Income Tax Regs. Thus, in order to effect an interim closing of the books in the present case, it is necessary to determine when the limited partnership, which utilized the accrual method of accounting, incurred the expenses for which a deduction has been allowed by our prior opinion.[6] The petitioners contend that the Commissioner bears the burden of proving when such expenses accrued and that unless the Commissioner can prove that they accrued before Mr. Johnsen became a limited partner, the Commissioner cannot apply the proration method because it does not provide the petitioners with the most favorable result.

The regulations under section 706(c)(2)(B) do not set forth methods for determining the distributive share of partners who are subject to the varying interest rule.[7] In *Richardson v.*

---

[5]In their Rule 155 computation, the petitioners treated the limited partnership's deductible expenses as having accrued after the petitioner became a partner, and calculated his distributive share of such expenses under an interim closing of the books as follows:

$$4.95\% \ \times \ \$121,924 = \$6,035.24 \ \text{(petitioner's share)}$$

[6]Throughout this opinion, we shall refer to the commitment fees involved herein as deductible expenses, accruable on a single day for tax purposes, because such is the litigating stance of the parties in this case. See *Johnsen v. Commissioner*, 83 T.C. 103, 121–125 & n. 8 (1984). However, as will be explained more fully in the text, *infra*, the limited partnership treated the loan commitment fees as capital expenditures and calculated its deductions for such fees by amortizing them over the life of the commitments. We are aware that in other cases, loan commitment fees have been treated as capital expenditures amortizable over the life of the loan. See *Williams v. Commissioner*, T.C. Memo. 1981–643; *Francis v. Commissioner*, T.C. Memo. 1977–170; see also Rev. Rul. 81–160, 1981–1 C.B. 312, revoking Rev. Rul. 56–136, 1956–1 C.B. 92.

[7]The regulations under sec. 706(c)(2)(A) do provide rules when there is a sale or liquidation of an entire partnership interest. Sec. 1.706–1(c)(2)(ii), Income Tax Regs., provides that in cases of the sale, exchange, or liquidation of a partner's entire interest in a partnership, the partner may, "in order to avoid an interim closing of the partnership books," estimate his share of the partnership's distributive items "by taking his pro rata part of the amount of such items he would have included in his taxable income had he remained a partner until the end of the partnership taxable year. The proration may be based on the portion of the taxable year that has elapsed prior to the sale, exchange, or liquidation, or may be determined under any other method that is reasonable."

The congressional reports accompanying an amendment to sec. 706(c)(2)(B) made by the Tax

*Commissioner*, 76 T.C. 512, 526 (1981), affd. 693 F.2d 1189 (5th Cir. 1982), we stated that partnership income or loss may be allocated between the periods prior to and after the admission of a new partner using any reasonable method, including an interim closing of the books or an allocation of yearend totals of profit and loss ratably over the year. See also *Roccaforte v. Commissioner*, 77 T.C. 263, 289 (1981), revd. on another issue 708 F.2d 986 (5th Cir. 1983); *Marriott v. Commissioner*, 73 T.C. 1129, 1139 (1980); *Moore v. Commissioner*, 70 T.C. at 1035. If the petitioner elects the interim closing of the books method, he has the additional burden of establishing the date when each partnership item was paid or incurred. *Sartin v. United States*, 5 Cl. Ct. 172, 175–176 (1984); *Moore v. Commissioner*, 70 T.C. at 1036.

In the present case, we have already found that the limited partnership taxable year began on April 11, 1976, and that the petitioner did not become a member of such partnership until July 19, 1976. Hence, the Commissioner has already proven that the petitioner is subject to the varying interest provision of section 706(c)(2)(B). There is no basis in law for the petitioners' contention that, having proven that much, the Commissioner must also go on to prove and apply the allocation method most advantageous to the petitioners. Contrary to the petitioners' suggestion at the hearing on this motion, nothing contained in the committee reports accompanying the Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1520, supports the imposition of such burden. Both the House and the Senate reports on a clarifying amendment to section 706(c)(2)(B) added by such act state that regulations are to be adopted under section 706(c)(2)(B) which will provide for use of the same allocation methods as are currently applicable to section 706(c)(2)(A) situations. The reports explain:

These rules will permit a partnership to choose the easier method of prorating items according to the portion of the year for which a partner was a partner or the more precise method of an interim closing of books (as if the year had closed) which, in some instances, will be more advantageous where most of the deductible expenses were paid or incurred upon or subsequent to the entry of the new partners to the partnership. [S. Rept. 94–938 (1976),

---

Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1547, direct that regulations be adopted "to apply the same alternative methods of computing allocations of income and loss to situations falling under section 706(c)(2)(B) as those now applicable to section 706(c)(2)(A) situations (sale or liquidation of an entire interest)." S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 49, 136. See H. Rept. 94–658 (1975), 1976–3 C.B. (Vol. 2) 695, 816. Such regulations have not yet been adopted.

1976–3 C.B. (Vol. 3) 49, 136; H. Rept. 94–658 (1975), 1976–3 C.B. (Vol. 2) 695, 816–817.]

These reports in no way suggest that if the Commissioner bears the burden of proof on the varying interest issue, he must select the method most favorable to the petitioner. Section 706(c)(2)(B) requires only that a reasonable method be applied, and the proration method selected by the Commissioner is reasonable. *Sartin v. United States*, 5 Cl. Ct. at 178; *Richardson v. Commissioner*, 76 T.C. at 526; *Marriott v. Commissioner*, 73 T.C. at 1139; see sec. 1.706–1(c)(2)(ii), Income Tax Regs. Therefore, we hold that where the Commissioner bears the burden of proof with respect to the applicability of section 706(c)(2)(B), such burden does not extend beyond proving the facts necessary for the application of a reasonable method of allocation. Since the Commissioner here has proven the simple facts needed to apply the proration method, we find that he has met the burden of proof.

In cases where the Commissioner has raised the varying interest issue and applied an allocation method (usually proration) in the notice of deficiency, the petitioner has been afforded the opportunity to prove and apply another reasonable method at trial. See *Sartin v. United States, supra*; *Richardson v. Commissioner, supra*; *Moore v. Commissioner, supra*. We believe that the petitioners are entitled to a similar opportunity in this case. The petitioners maintain that all of the limited partnership's deductible expenses accrued sometime after Mr. Johnsen became a partner and, consequently, seek to apply the interim closing of the books method, as it will result, in such circumstances, in no downward adjustment of his distributive share. Upon an examination of the record, we hold that the petitioners have failed to prove that the bulk of the expenses accrued after Mr. Johnsen's entry into the partnership.

The expenses in question, construction and permanent loan commitment fees, and a management and guarantee fee, were obligations arising from separate contracts entered into between the limited partnership and Centre Square III (the general partnership). Very generally, the limited partnership was formed to acquire land and to construct and operate an apartment project called Centre Square III. The general partnership provided construction and permanent financing

and apartment management services to the limited partnership. See our findings of fact in *Johnsen v. Commissioner*, 83 T.C. at 104–114, for more details of the arrangement.

The construction loan commitment agreement was embodied in a letter issued by the general partnership to the limited partnership on April 15, 1976, as amended by a letter of April 20, 1976. The letter provided that the general partnership would make a construction loan of $3,171,200 at an interest rate of 2½ percent over the Chase Manhattan Bank's prime rate. The limited partnership agreed to pay a $28,200 "nonrefundable standby commitment fee" due at the time of its acceptance of the commitment. The construction loan commitment was effective until April 30, 1977, but was subsequently extended to August 31, 1977, by agreement dated August 17, 1976. The general partnership charged no additional fee for extending its construction loan commitment. On September 10, 1976, the limited partnership executed a nonrecourse construction loan note.

The permanent loan commitment was also contained in a letter, which was issued on April 14, 1976, and amended by a second letter of April 20, 1976. The commitment provided for a 30-year loan of $3,171,200 at an annual interest rate of 9¾ percent. The limited partnership agreed to pay a "nonrefundable standby commitment fee" of $84,600 due at the time of the commitment letter's acceptance (acceptance being required by May 15, 1976). In August 1976, the general partnership extended its permanent loan commitment until August 31, 1977; for the extension, the limited partnership paid a fee of $11,280. The limited partnership executed a nonrecourse promissory note and a deed of trust reflecting the terms of the permanent loan commitment in October 1977.

The limited partnership amortized the $28,200 construction loan commitment fee and the $84,600 permanent loan commitment fee over the life of each commitment. According to its accountant's workpapers, the limited partnership treated both commitments as having commenced on April 20, 1976, and using a half-month convention, amortized each commitment over a period beginning on May 1, 1976. Thus, the limited partnership deducted amortization for 8 months in 1976. The $11,280 permanent loan commitment extension fee was similarly amortized over the life of the extension. Such fee was

treated as having been incurred on August 17, 1976, and applying the half-month convention, was amortized over a period commencing on September 1, 1976. In our prior opinion, we determined that the limited partnership was entitled to deduct in 1976 all of the $15,667 claimed on its return as amortization of the construction commitment fee, and $20,901 of the $50,760 claimed as amortization of the permanent commitment fee and extension fee.[8]

The limited partnership's $50,000 management and guarantee fee deduction, which we determined to be allowable in our earlier opinion, arose under a written management agreement executed by the general and limited partnerships on April 11, 1976. Under the terms of the agreement, the general partnership assumed total responsibility for the leasing, management, and administration of Centre Square III. The general partnership also guaranteed that Centre Square III would operate without cash flow deficits through December 31, 1980. For its services and the guarantee, the general partnership would receive 5 percent of the gross receipts generated by Centre Square III and an additional $50,000 each year for 1976 through 1980. During 1976, there were no gross receipts, and the percentage fee yielded no payment. However, the fixed $50,000 fee was paid in that year and was primarily intended to compensate the general partnership for management activities. According to its accountant's workpapers, the limited partnership viewed the management fee as having accrued on April 11, 1976, the day on which the management agreement was executed.

The petitioners now argue that none of the above expenses were incurred until after Mr. Johnsen became a partner in July 1976, despite the fact that the limited partnership treated all (with the exception of the extension fee) as having been incurred in April 1976 and calculated its amortization deductions from such time. Under the accrual method of accounting, an expense is deductible in the taxable year in which "all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy." Sec. 1.461–1(a)(2), Income Tax Regs.; see *United States v. Anderson*, 269 U.S. 422, 442 (1926). The petitioners do

---

[8]See notes 3 & 6, *supra.*

not contest the certainty of the amounts of the expenses in question, but do assert that the fact of the liability was subject to a substantial contingency, the rezoning of the land on which the apartment project was to be built from commercial to residential.[9] This contingency is not express in any of the agreements between the general partnership and the limited partnership. Nevertheless, the petitioners contend that such a condition to the limited partnership's obligation to pay the fees in question is inferable if the management and loan commitment agreements are viewed in the larger context of the apartment project venture. Specifically, they rely upon the general partnership's warranty, contained in the sales agreement under which it agreed to sell the apartment project to the limited partnership, that the project would comply with zoning ordinances. The sales agreement was executed on April 11, 1976, at about the same time as the management and loan commitment agreements, and also referred to such agreements.

The petitioners' argument is unpersuasive for a number of reasons. First, none of the agreements between the partnerships, including the sales agreement, was expressly made conditional upon the acquisition of rezoning. Furthermore, there is no evidence that, at the time they executed the agreements, the parties feared that rezoning would not be obtained. At such time, rezoning had already been unanimously approved by the local zoning commission. The parties' confidence that the rezoning would occur is indicated by the construction loan commitment agreement, which provided that the general partnership would be ready to make its first loan advance on May 1, 1976. Only after the execution of the contracts did rezoning become a potential problem. Neighborhood opposition to the project caused the city council to reject the rezoning application, but without prejudice to its resubmission. In September 1976, the city council eventually approved

---

[9]The petitioners have also contended that, under the terms of the private offering memorandum issued to prospective investors in the limited partnership, all invested funds would be returned if 40 percent of the limited partnership units were not sold prior to closing on the sale of the apartment project to the limited partnership. The 40-percent subscription requirement was said to be a contingency delaying accrual of the expenses at issue until the closing in September 1976. However, at the hearing, the petitioners conceded that the record indicates that such contingency was eliminated by late May, when the 40-percent requirement was met. Therefore, we shall treat this second contingency argument as abandoned and shall not discuss it further.

the zoning change. Although the neighborhood opposition delayed the start of construction until September, the petitioners have failed to prove that the eventual outcome of the rezoning application was ever in substantial doubt. The limited partnership itself must not have viewed rezoning as a condition to its liability, since it treated the expenses as incurred in May, and not in September.

The petitioners' argument also fails to consider the nature of standby loan commitment fees. Such fees are paid to the lender in return for the lender's present promise to make a loan of a stated amount at a stated interest rate over a stated period. See Neuman & Elfman, "The Tax Treatment of Loan Commitment Fees after Rev. Ruls. 81–160 and 81–161," 60 Taxes 394, 395 (1982); G. Robinson, Federal Income Taxation of Real Estate, pars. 7.02, 8.05[2][b] (1984). The construction and permanent loan commitment fees in the present case were nonrefundable and due upon acceptance of the commitment. The limited partnership's liability to pay the fees became fixed upon acceptance. It is significant that the parties to the commitment agreements executed extensions thereof in August 1976 when the start of construction was delayed by the zoning problem. An additional fee was also charged for the extension of the permanent loan commitment.

We can only conclude that the petitioners have failed to prove that the limited partnership's deductible expenses, with the exception of the permanent loan commitment extension fee,[10] accrued after Mr. Johnsen entered the partnership. Consequently, we hold that the petitioners have not proven the facts necessary for application of the interim closing of the books method, and their motion to vacate our decision will be denied.

Before we close, we must address one last argument. The petitioners assert that the record suggests, if it does not establish, that the limited partnership did not pay the management and loan commitment fees until September 1976. They maintain that if the limited partnership had utilized the cash method of accounting, Mr. Johnsen would be entitled to an unreduced share of the partnership's losses under the interim closing of the books method. See *Richardson v.*

---

[10]The permanent loan commitment extension fee accrued after the petitioner became a partner because the extension was not agreed to until August 1976.

*Commissioner*, 76 T.C. at 527. According to the petitioners, the result should be no different because the limited partnership in the present case used the accrual method, since Mr. Johnsen's funds were used to discharge the limited partnership's obligations.

We disagree. In *Richardson*, the Commissioner contended that new members of a cash method partnership could not be allocated losses based on an interim closing of the books unless the partnership's expenses were incurred as well as paid after their entry. We rejected the Commissioner's contention, observing that the deductibility and timing of a deduction is determined at the partnership level and by the method of accounting utilized by the partnership. 76 T.C. at 527; see W. McKee, W. Nelson & R. Whitmire, Federal Taxation of Partnerships and Partners, par. 9.02[1], at 9-5 to 9-7 (1977). We held that a share of partnership expenses incurred before but paid after the entry of the new partners could be allocated to them because their funds were used to pay the expenses and caused such expenses to become deductible. 76 T.C. at 527. Such is not the case here. The limited partnership utilized the accrual method in calculating its deductions, and since the bulk of the partnership's deductions were incurred and deductible before Mr. Johnsen became a partner, a retroactive allocation of tax losses would result if we pretended that the partnership was on the cash method for purposes of an interim closing of the partnership books.

We also observe that Congress has significantly amended section 706(c)(2)(B) since our decision in *Richardson*. Sec. 72, Tax Reform Act of 1984, Pub. L. 98–369, 98 Stat. 589. Effective for amounts attributable to periods after March 31, 1984, the amendment essentially requires that, for purposes of section 706(c)(2)(B), cash method partnerships must utilize the accrual method with respect to certain expenditures, and that such items must be allocated ratably among old and new partners. Although not applicable to the case before us, the amendment supports our position that an interim closing of the books based on the date of payment rather than accrual would result in the retroactive allocation of losses to Mr. Johnsen.

*Petitioners' motion to vacate the decision will be denied.*