**FOOD MACHINERY AND CHEMICAL CORPORATION, a Corporation**

v.

**The UNITED STATES.**

No. 83–60.

United States Court of Claims.

Oct. 14, 1966.

Harry R. Horrow, San Francisco, Cal., attorney of record, for plaintiff. Robert W. Morrison, John G. Clancy, and Pillsbury, Madison & Sutro, San Francisco, Cal., of counsel.

Theodore Peyser, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant. Lyle M. Turner and Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, JONES and WHITAKER, Senior Judges, and LARAMORE and DAVIS, Judges.

JONES, Senior Judge.

Taxpayer, Food Machinery and Chemical Corporation (FMC), claims a refund of income tax for the year 1950.[1]  Tax-

---

1. Taxpayer's original petition in this action was in two counts. The first, based on a World War II contract with the Department of the Navy, raised issues which were decided adversely to taxpayer by this court in Food Mach. & Chem. Corp. v. United States, 286 F.2d 177, 151 Ct.Cl. 652 (1960), cert. denied, 368 U.S. 918, 82 S.Ct. 238, 7 L.Ed.2d 134 (1961).  Only the second count is under consideration here.

payer's claim is based on an allowance for depletion of phosphate shale deposits on the Fort Hall Indian Reservation near Pocatello, Idaho. Since 1948, FMC, under an agreement with J. R. Simplot, lessee of the deposits, received mined phosphate shale for use in the production of elemental phosphorus at its electric furnaces near Pocatello. FMC paid Simplot to mine the shale and also bore the expense of a 10 percent royalty payment to the Indian mine owners-lessors.

Taxpayer and defendant were before this court last year in plaintiff's suit for a tax refund covering the year 1949. Food Mach. & Chem. Corp. v. United States, 348 F.2d 921, 172 Ct.Cl. 313 (1965). The suit involved the same mining and production operation under consideration here. The basis of taxpayer's claim was that its capital investment in the shale in place and the return on its investment realized solely from extraction of the shale entitled it to a depletion allowance. Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489 (1933). We held that taxpayer had acquired the economic interest necessary for a depletion allowance. Factors influencing our decision were FMC's capital investment in electric furnaces near Pocatello which made the shale mining economically feasible; FMC's dependence on the mined shale for a return on this investment; and its control of the shale reserves and critical aspects of the mining operation. 348 F.2d at 928, 172 Ct.Cl. at 325-326. We further held that the proper cutoff point for determining the depletion allowance was the loading of the shale into gondola cars at the mine. 348 F.2d at 931, 172 Ct.Cl. at 330 and 331. Because the parties had stipulated the amounts of depletion for all possible cutoff points we found it unnecessary to decide whether Simplot should share with FMC in the depletion allowance for the shale.

Taxpayer's petition in this action was filed long before our decision covering its 1949 tax was handed down. Motions in this action were withheld pending the outcome of last year's case. The questions of whether FMC is entitled to a depletion allowance, and of where the appropriate cutoff point is, need not be raised again. We fully considered these issues in 1965 and our decision there is equally applicable here. Both taxpayer and defendant have now filed motions for summary judgment in this action. Taxpayer, in its motion, at first maintained that, under the doctrine of collateral estoppel as construed by the Supreme Court in Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948), our decision covering the year 1949 prevented defendant from continuing litigation because the issues and parties are the same, with only the tax year differing. Taxpayer felt that the stipulations in the earlier action showed that the successful party was inherently awarded the full depletion allowance, with nothing to be shared with the loser. On the other hand, defendant maintains that as a matter of law Simplot is entitled to a share equal to the $1.00 per ton paid to it by FMC for phosphate shale loaded on the gondola cars at the mine. Both parties have, in the alternative, argued the question on its merits.

We find it necessary to reach and decide the question of whether Simplot has retained a share of the allowance for the depletion of the phosphate shale in place. As noted above, we did not entertain this question in our earlier decision, specifically because the parties' stipulations made it unnecessary. There are no such stipulations for the year 1950. We feel therefore that the doctrine of collateral estoppel does not prevent us from proceeding on this point. As noted by the Supreme Court in *Sunnen*:

> [I]f the later proceeding is concerned with a similar or unlike claim relating to a different tax year, the prior judgment acts as a collateral estoppel only as to those matters in the second proceeding which were actually presented and determined in the first suit. [333 U.S. at 598, 68 S.Ct. at 720.]

Since we did not determine the matter of Simplot's share, if any, in our earlier decision, we do so now.

The question presented is this: With respect to the phosphate shale, did Simplot, although the lessee of the mine, merely act as a miner paid by FMC to extract the shale, or did Simplot retain some degree of economic interest so as to allow it to share the depletion allowance with FMC?

■■ There is but one allowance for depletion of a wasting asset, Helvering v. Twin Bell Oil Syndicate, 293 U.S. 312, 321, 55 S.Ct. 174, 79 L.Ed. 383 (1934), which is shared only by those with an economic interest in the asset. In order for Simplot to claim a share of the depletion allowance for the phosphate shale in place it would have to meet the same conditions we required of taxpayer when we decided last year that it was qualified for the allowance. These requirements are that the claimant have "(1) A capital investment in the mineral in place, and (2) a return on the investment which is realized solely from the extraction of the mineral." 348 F.2d at 926, 172 Ct.Cl. at 323. These requirements were formulated by the Supreme Court in Palmer v. Bender, supra, 287 U.S. at 557, 53 S.Ct. 225, and have been applied in depletion cases ever since. The court does not feel that Simplot's position satisfies the requirements.

■ In regard to the first requirement, defendant has argued that Simplot did not transfer its interest in the shale to taxpayer without any consideration by means of the 1948 agreement between the parties. However, it is not the agreement per se which controls here, but rather the relationship of Simplot and taxpayer to the asset in carrying out the agreement. Our opinion covering the year 1949 set out several factors which tended strongly to show that it was taxpayer and not Simplot which had the significant investment in the shale: among these factors were that taxpayer invested millions of dollars in the construction of electric furnaces which were essential to the mining and use of the shale; that

taxpayer had reserves in the shale for 25 years; that it could compel production of the shale and prohibit sales to any other party; that taxpayer invested millions of dollars in the operation of the mine itself; and that there were no other shale deposits to which taxpayer could look to supply its furnaces. In summing up these factors we said, "We feel that this comprises a requisite capital investment in the mineral and is in line with the economic interest rule as laid down in *Palmer* and all the cases thereafter." 348 F.2d at 928, 172 Ct.Cl. at 326.

In regard to the second requirement we turn to the numerous findings of fact of the trial commissioner which were incorporated in our earlier opinion. The most significant for the purposes of this requirement was finding 63:

The agreed price of $1 per ton [paid by FMC for the mined shale] was not based on consideration of the fair market value of the furnished grade shale but rather on the mining cost involved, plus a gross profit to Simplot of not less than 10 percent. [172 Ct.Cl. at 358.]

This finding shows that, with respect to the phosphate shale, Simplot acted as a miner paid to extract the mineral, and not as an owner of an economic interest which sold the shale to FMC. The fact that the contract between the parties spoke of a sale by Simplot to FMC does not change this, because, as noted in finding 66:

The 1948 Simplot agreement was cast in terms of sale by Simplot and purchase by plaintiff [FMC] of tonnages of furnace grade shale, but the substance of such agreement was that plaintiff thereby acquired reserves of furnace grade shale in place, to be mined and delivered by Simplot to plaintiff at a "price" covering Simplot's mining cost thereof, plus a 10 percent profit, with Indian royalties on such shale payable by plaintiff. [172 Ct.Cl. at 359.]

The income, therefore, which Simplot received, was not derived from extraction of the shale, but for services rendered to taxpayer in mining the shale.

When taxpayer made its huge investment in the phosphate shale, and when it in effect engaged Simplot to mine the shale for it, Simplot found itself in substantially the same position as the contract miners in Paragon Jewel Coal Co. v. Commissioner of Internal Revenue, 380 U.S. 624, 85 S.Ct. 1207, 14 L.Ed.2d 116 (1965). There the miners claimed that their preparation for and participation in the mining operation entitled them to an allocable portion of the depletion allowance. The Supreme Court disagreed even though the miners had a continuing right to produce the coal and were paid a price closely related to the market price. 380 U.S. at 631, 85 S.Ct. 1207. The payment to Simplot, as we have noted, was unrelated to the market price. The Supreme Court further held that the miners' investment of time and money in developing the mines was not sufficient to entitle them to a share in the depletion allowance. The Court stated:

> As we said in *Palmer* * * *, the deduction is allowed only to one who "has acquired, by investment, any interest in the [asset] * * * in place, and secures, by any form of legal relationship, income derived from the extraction of the [asset] * .* *, *to which he must look for a return of his capital."* [380 U.S. at 635, 85 S.Ct. at 1213.]

The foregoing represents the reasoning and conclusions of the majority of the court. The majority feels that the *Paragon Jewel Coal Company* case, supra, is controlling and that therefore Simplot has no depletable interest in the shale deposits involved here.

While the question is a close one the writer feels that Simplot retained a small economic interest in the shale in place. As in the original case, we must look through the form to the substance of the agreement. It is true that the $1.00 per ton was to be paid to cover the cost of the shale mining plus a profit based on that cost. But the agreement provided that this payment might go up in amount to cover the actual cost. Finding 62, 172 Ct.Cl. at 357.

But in any event 10 cents per ton was to be added above the actual cost of the operations, whatever that cost might be. It was paid even if taxpayer decided it could operate the mine more economically and took over the operation as provided in the agreement. Ibid. The only condition under which such payment would stop would be in the event Simplot defaulted in the contract. Finding 57, 172 Ct.Cl. at 355 and 356.

That 10 cents per ton payment was inextricably tied to the operation and would last only until the shale was exhausted. It would be gradually depleted as the shale would be taken out. When all the shale was removed there would be no more payment. Simplot therefore had a 10 cents per ton economic interest in the shale in place, in my opinion. (I use the term 10 cents per ton rather than 10 percent, because 10 cents per ton was to be a minimum payment above cost, regardless of the cost of excavating the shale, and was to be increased only in the event the cost of excavating the shale exceeded $1.00 per ton. The evidence shows that the cost never exceeded $1.00 per ton. Finding 64, supra. Thus the minimum payment of 10 cents per ton applied.) I would hold therefore that Simplot has a 10 cents per ton share in the depletion allowance of the shale that is marketed, and that taxpayer's recovery should be limited to the balance. This is merely my personal viewpoint.

However, for the reasons stated in the first part of this opinion the court concludes that Simplot did not have an economic interest sufficient to support a share in the allowance for depletion of the phosphate shale. Hence taxpayer is entitled to the full depletion allowance, save only the 10 percent royalty paid by taxpayer to the Indian owners. Accordingly, taxpayer's motion for summary judgment is granted to the extent that

it does not rely on the principle of collateral estoppel; defendant's motion is denied. The amount of recovery is to be determined pursuant to Rule 47(c) (2) of the Rules of this court.