**RISSLER & McMURRY CO., INC., a corporation, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 72–1545.**

United States Court of Appeals, Tenth Circuit.

Argued March 30, 1973.

Decided June 19, 1973.

---

Harry E. Leimback, Casper, Wyo., for appellant.

Gordon S. Gilman, Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, and Grant W. Wiprud, Dept. of Justice, Washington, D. C., and of counsel, Richard V. Thomas, U. S. Atty., with him on the brief), for appellee.

Before LEWIS, Chief Judge, BARRETT, Circuit Judge, and TALBOT SMITH *, District Judge.

LEWIS, Chief Judge.

This is an appeal from a judgment by the United States District Court for Wyoming denying a claim for refund of federal income taxes for the calendar year 1965 by Rissler & McMurry Co., Inc. (taxpayer). Jurisdiction in this appeal rests upon 28 U.S.C. § 1291.

The material facts may be summarized. In 1965 the taxpayer made a successful bid on a construction contract offered by the city of Lander, Wyoming for the building and paving of certain roads within the city. Included in the city's bid specification was the provision that the successful bidder could use a gravel pit owned by the city as a source of construction material upon the payment of two cents per ton or three cents per cubic yard. The taxpayer elected to use the city's gravel pit. Subsequently, the city and taxpayer entered into an oral agreement which allowed material extracted from the gravel pit to be sold by the taxpayer to other parties upon approval by the City Council and payment of a royalty.

Work on the project was begun in June 1965. Taxpayer installed removable equipment worth $636,748.00 at the gravel pit. This equipment was subject to a depreciation allowance. Taxpayer then proceeded to extract 183,208 tons and 18,681 cubic yards of material during taxable year 1965. This included 183,000 tons and 7,949 cubic yards of aggregate for use in the city project and

---

* Of the Eastern District of Michigan sitting by designation.

208 tons and 10,732 cubic yards of aggregate sold to other parties. Taxpayer paid the city a royalty of $3,675.00 for aggregate used in construction of city roads and $309.35 for aggregate sold to other parties.

Taxpayer filed a timely tax return for 1965. In 1968 taxpayer filed a tax refund claim of $5,911.96 plus interest for a previously unclaimed depletion allowance on sand and gravel removed from the city's gravel pit in 1965. The Internal Revenue Service rejected this claim for refund and was upheld by the district court.

In order for a taxpayer to qualify for a depletion allowance on taxable income he must come within the statutory purview of 26 U.S.C. § 611(a) which states:

> In the case of mines, oil and gas wells, other natural deposits, and timber, there shall be allowed as a deduction in computing taxable income a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under regulations prescribed by the Secretary or his delegate. . . .

The Commissioner of Internal Revenue, under the mandate of Section 611, developed regulations controlling depletion deductions. Section 1.611–1(b) of the Treasury Regulations, 26 C.F.R. § 1.-611–1(b), provides:

> (b) *Economic interest.* (1) Annual depletion deductions are allowed only to the owner of an economic interest in mineral deposits or standing timber. An economic interest is possessed in every case in which the taxpayer has acquired by investment any interest in mineral in place or standing timber and secures, by any form of legal relationship, income derived from the extraction of the mineral or severance of the timber, to which he must look for a return of his capital. But a person who has no capital investment in the mineral deposit or standing timber does not possess an economic interest merely because through a contractual relationship he possess [sic] a mere economic or pecuniary advantage derived from production.

Accordingly, the sole issue on appeal is whether the taxpayer possessed an "economic interest", as required by statute and regulation, in a gravel pit owned by the city of Lander, Wyoming which would allow it to claim a deduction for depletion.

The controlling considerations in determining if a taxpayer has an economic interest in minerals entitling him to a depletion allowance are: (1) whether the taxpayer made a capital investment in the minerals in place and (2) whether the return on the taxpayer's investment was realized solely from the extraction of the minerals. *See* Palmer v. Bender, 287 U.S. 551, 557, 53 S.Ct. 225, 77 L.Ed. 489; Commissioner v. Southwest Exploration Co., 350 U.S. 308, 312, 76 S.Ct. 395, 100 L.Ed. 347; Food Machinery & Chemical Corp. v. United States, Ct.Cl., 366 F.2d 1007, 1009, 177 Ct.Cl. 219.

The Supreme Court has taken great pains to distinguish between the requisite economic interest needed for a depletion allowance and other forms of economic advantage derived from use of minerals. In Helvering v. Bankline Oil Co., 303 U.S. 362, 367, 58 S.Ct. 616, 618, 82 L.Ed. 897, the Court stated:

> But the phrase "economic interest" is not to be taken as embracing a mere economic advantage derived from production, through a contractual relation to the owner, by one who has no capital investment in the mineral deposit. See Thomas v. Perkins, 301 U.S. 655, 661, 57 S.Ct. 911, 81 L.Ed. 1324.

In *Bankline* the taxpayer was a processor of gas who had contracted with the owners of gas wells to extract and sell their gas. The taxpayer paid the well owners a percentage of the proceeds of the sales. The Court determined that the taxpayer only had a contractual in-

terest in the producing wells and gas, therefore rejecting any depletion claims.

■ In two recent cases which invoked *Bankline,* the Supreme Court provided certain criteria for determining whether a taxpayer had an economic interest or merely an economic advantage in mineral properties. In Parsons v. Smith, 359 U.S. 215, 79 S.Ct. 656, 3 L. Ed.2d 747, taxpayers contracted with landowners to strip-mine coal off the latter's land. The taxpayers were to receive from the landowners a fixed payment per ton for the coal removed. An economic interest allowing for depletion was asserted by the taxpayers who argued that their equipment, time and skill were tantamount to a capital investment in the coal. The Court held that the taxpayers did not have a sufficient economic interest in the coal for a depletion allowance based upon the following criteria and specific facts:

> (1) that petitioners' investments were in their equipment, all of which was movable—not in the coal in place; (2) that their investments in equipment were recoverable through depreciation —not depletion; (3) that the contracts were completely terminable without cause on short notice; (4) that the landowners did not agree to surrender and di⁻ not actually surrender to petitioners any capital interest in the coal in place . . . 359 U.S. 215, 225, 79 S.Ct. 656, 663.

Accordingly, a taxpayer must show more than an investment in equipment, which is depreciable, and a contract to remove mineral deposits off another's land before a sufficient economic interest for depletion purposes is established.

Again, the Supreme Court was compelled to establish further guidelines as to what constitutes an economic interest in mineral properties in Paragon Jewel Coal Co. v. Commissioner, 380 U.S. 624, 85 S.Ct. 1207, 14 L.Ed.2d 116. *Paragon* involved a contract between the Paragon Jewel Coal Company and certain contractors for the extraction of coal by the drift-mining method. The contractors were to deliver coal to Paragon for a fixed tonnage fee. The contractors had to dig numerous tunnels and ventilation shafts to recover the coal. The contract was for an indefinite time period although the contractors were not required to mine the coal to exhaustion. In rejecting the contractors' claim for a depletion allowance the Court stated:

> In any event, the right to mine even to exhaustion, without more, does not constitute an economic interest under *Parsons,* but is "a mere economic advantage derived from production, through a contractual relation to the owner, by one who has no capital investment in the mineral deposit." Helvering v. Bankline Oil Co., 303 U. S. 362, 367, 58 S.Ct. 616, 82 L.Ed. 897 (1938). 380 U.S. 624, 634–635, 85 S. Ct. 1207, 1212.

Furthermore, the Court was not convinced that the indefinite time period of the contract was sufficiently different from the requirements in *Parsons* to warrant the finding of a depletable economic interest.

■ A review of the pertinent facts of this case in light of the criteria set forth by statute and the Supreme Court clearly supports the district court's determination that the taxpayer, at most, possessed an economic advantage in the gravel pit. The taxpayer did not meet the *Parsons* and *Paragon* requirements for the necessary showing of a capital investment in mineral deposits. Rather, the facts disclose that the taxpayer had not made any permanent improvements at the gravel pit, and the short-term contract under which the taxpayer operated reflected no intention by the city to surrender its interest in the gravel. Furthermore, taxpayer did not meet the second essential statutory requirement for an economic interest, *i.e.,* that it look solely to the extraction of gravel for a return on its investment. The taxpayer was under contract with the city to make street improvements for which it would be paid a sum certain. Any additional profits made from selling gravel

to third parties were only minor when compared with the total contract price and certainly were not the sole basis for a return on taxpayer's investment.

Accordingly, the judgment of the district court is affirmed.