Charles CALHOUN, Petitioner,

v.

Robert FARLEY, Respondent.

No. 2:94cv243AS.

United States District Court,
N.D. Indiana,
Hammond Division.

Dec. 27, 1995.

Charles Calhoun, Jr., Michigan City, pro se.

Randall Koester, Office of Indiana Attorney General, Indianapolis, IN, for Robert A. Farley and Al C. Parke.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I. INTRODUCTION

On July 28, 1994 Petitioner Charles Calhoun ("Calhoun") filed an amended petition under 28 U.S.C. § 2254 alleging that his murder and habitual offender convictions in a jury trial before the Honorable James E. Letsinger, judge of the Lake County Superior Court were obtained in violation of the United States Constitution. Respondent

Farley's Return to Order to Show Cause by the Indiana Attorney General complies with *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir. 1982). In his Return, Farley alleges that the petition is barred by the procedural issues of failing to exhaust state remedies and procedural default.[1]

## II. FACTS

The facts found by the Indiana Supreme Court in *Calhoun v. State,* 484 N.E.2d 7 (Ind.1985) are presumed correct. 28 U.S.C. § 2254(d). *See also, Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Andersen v. Thieret,* 903 F.2d 526, 531 (7th Cir.1990).

> On March 17, 1982, appellant entered the Double B Barbershop in Gary, Indiana to purchase a lottery ticket. The proprietor informed appellant that it was too late to purchase a ticket; consequently, he offered to sell appellant a lottery ticket for the next day. Thereafter, the victim [Ronald Johnson] staggered into the barbershop. The victim was noticeably intoxicated.[2] The victim offered appellant a drink of wine from his bottle. Appellant responded, "I'm not a winehead," and then he hit the victim, knocking him back. Immediately afterwards, appellant grabbed the victim by the collar and exclaimed, "I'll kill you your mother fucking ass." Then, appellant pulled out his gun, and he shot the victim. The bullet entered the victim's cheek, and it lodged in the victim's skull. Appellant laid the victim down on the floor, and he told the proprietor, "It's all over." The victim died from the gunshot wound.

*Id.* at 8–9.

Because several witnesses in the barbershop knew both Calhoun and Johnson, there was never any question that Calhoun shot Johnson. At trial, Calhoun's attorney was faced with the difficult chore of persuading the jury that Calhoun was justified in shooting the intoxicated and gregarious visitor. His attorney was unsuccessful and Calhoun

was convicted of murder. Because this was not Calhoun's first conviction, he was subject to sentencing under the habitual offender statute. Calhoun was convicted of robbing a federal credit union by the Hammond Division of this court, Cause No. 3913, on April 19, 1968 and he received a ten year sentence. Calhoun soon resumed his criminal ways and was convicted of robbery by the Lake County Superior Court and received another ten years sentence. Finally, on December 17, 1982 Calhoun received fifty (50) years for murdering Johnson and thirty (30) years for being a habitual offender.

Dissatisfied with the verdict and his sentence, Calhoun filed a Motion to Correct errors. The trial court denied the motion on January 25, 1983. Calhoun then filed his direct appeal to the Indiana Supreme Court alleging the following four issues.

1. Whether the trial court erred in refusing to submit to the jury his tendered accidental homicide instruction # 2;

2. Whether he was denied effective assistance of counsel;

3. Whether his sentence violates the double jeopardy clause in that the trial court enhanced the presumptive sentence and the enhanced it further on the basis of the habitual offender determination;

4. Whether the trial court erred in not permitting him to be present at the hearing on the belated motion to correct errors.

On October 24, 1985 the Indiana Supreme Court affirmed the trial court. The Court found that the jury "receive[d] the substance of [Calhoun's] tendered instruction two (# 2) through the court's own final instruction fourteen (# 14)." *Calhoun,* 484 N.E.2d at 9. The Court also rejected Calhoun's ineffective assistance of counsel claim premised on failing to call witnesses. The court found that "there had already been ample testimony about the lottery operation at the barbershop to permit a fair determination by the jury of

---

1. Pursuant to 28 U.S.C. § 137 for reason of efficient administration of the docket, this case was reassigned from the Honorable James T. Moody to the Honorable Allen Sharp on October 6, 1995.

2. [Testimony at trial revealed that the victim's blood alcohol content was .302. (Trial Record "TR" at 380).]

the proprietor's credibility" and that statements from Calhoun's wife would have been hearsay. The Court rejected the double jeopardy argument outright and also held Calhoun was not prejudiced his absence at the Belated Motion to Correct Errors hearing.

On March 28, 1988 Calhoun filed a *pro se* petition for post-conviction relief in the Lake County Superior Court. Calhoun amended his post-conviction petition on October 16, 1989 and hearings on the matter were conducted on August 8, 1990, September 5, 1990, October 24, 1990, and June 11, 1991. Calhoun alleges that the issues raised in the post-conviction court were ineffective assistance of appellate counsel, prosecutorial misconduct, abuse of discretion by the trial court, improper admission of prejudicial evidence including his prior criminal history, omission of trial record. Nothing appears in the record to indicate that a decision on the above issues has been made by the post-conviction court. In fact, nothing has been filed by either the State of Indiana or Calhoun for almost two years.

Unhappy with the delay in the state courts, Calhoun turned to the federal courts. On September 8, 1994, Calhoun filed in the Hammond Division of this court a petition under 28 U.S.C. § 2254. That complaint was subsequently amended on July 28, 1995 and in his amended petition Calhoun alleges ineffective assistance of appellate counsel, prosecutorial misconduct, judicial misconduct, improper admission of his prior criminal history, and improper omission of critical parts of the trial record. Respondent Farley, through the Indiana Attorney General argues the petition is barred by the doctrines of failure to exhaust state remedies and procedural default.

## III.  ISSUES

The sequential issues are: Should Calhoun exhaust his state remedies; if not, has Calhoun procedurally default his issues; if not, do the following consolidated issues have any merit?

A.  Effectiveness of appellate counsel.

B.  Prosecutorial Misconduct.

C.  Judicial Misconduct.

D.  Omission of the trial record.

## IV.  DISCUSSION

While the concepts of comity and federalism often require a federal court to await state judicial determinations, there comes point when delay in those state proceedings becomes so great that it outweighs the concerns of comity and federalism. Such has occurred in this case. Therefore, this court finds that pursuant to *Lowe v. Duckworth,* 663 F.2d 42 (7th Cir.1981) and *Dozie v. Cady,* 430 F.2d 637 (7th Cir.1970) sufficient time has passed to excuse the need for exhausting state remedies.

Respondent also argues that further consideration of Calhoun's issues is barred by the doctrine of procedural default. The doctrine of procedural default essentially prohibits Calhoun from raising any issue in the district court if he did not raise the issue in a prior state court. *Cawley v. Detella,* 71 F.3d 691, 693 (7th Cir.1995) (citations omitted). "Failure to take such claims all the way to the highest state court results in procedural default, unless the petitioner can show cause and prejudice." *Id.* at 694. *See also, Wainwright v. Sykes,* 433 U.S. 72, 86–91, 97 S.Ct. 2497, 2506–08, 53 L.Ed.2d 594 (1977). This procedural default would present an independent and adequate state ground that would preempt the need for further federal review. *Jenkins v. Gramley,* 8 F.3d 505, 507 (7th Cir.1993).

None of issues raised in the current petition were clearly presented to Indiana's highest court. Therefore, it is likely that the state post-conviction court would find the issues barred on the independent state ground that "[u]ncorrected errors of law that were available to the defendant at the time of direct appeal, but are first raised in a petition for post-conviction relief, are not available in the post-conviction action." *Lowery v. State,* 640 N.E.2d 1031, 1036–7 (Ind.1994). However, this court will not rely on that likelihood. Since there has been no decision from the post-conviction court, there is no independent and adequate state ground precluding this court's review. Therefore, this

court will address Calhoun's issues on the merits.

■ Prior to addressing the issues, it needs to be emphasized that this court does not sit as a trier de novo in state court criminal proceedings and does not sit as a court of general common law review. The collateral review that is envisioned by § 2254 focuses on violations of the federal Constitution. *See Bell v. Duckworth*, 861 F.2d 169 (7th Cir.1988), *cert. den.*, 489 U.S. 1088, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989).

It also needs to be remembered that the federal question jurisdiction of this court is not involved with determining whether state officials have violated state law. *See Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

## A. EFFECTIVENESS OF APPELLATE COUNSEL

■ Calhoun has the right to effective assistance of appellate counsel. *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1984); *Hollenback v. United States*, 987 F.2d 1272 (7th Cir.1993). The effectiveness of appellant counsel is examined under the same constitutional mandates as trial counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). In *United States v. Grizales*, 859 F.2d 442 (7th Cir. 1988), Judge Eschbach, speaking for the court stated:

The Supreme Court has instructed that in evaluating the performance of a trial attorney we are to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2054. Appellant "has a heavy burden in proving a claim of ineffectiveness of counsel." *Jarrett v. United States*, 822 F.2d 1438, 1441 (7th Cir.1987) (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064). The Supreme Court has further cautioned appellate courts to resist the temptation to "second-guess" the actions of trial counsel after conviction. *Id.* It is clear that the performance of trial counsel should not be deemed constitutionally defi-

cient merely because of a tactical decision made at trial that in hindsight appears not to have been the wisest choice. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *United States v. Kennedy*, 797 F.2d 540, 543 (7th Cir.1986).

*See also Hockett v. Duckworth*, 999 F.2d 1160 (7th Cir.1993), *Biggerstaff v. Clark*, 999 F.2d 1153 (7th Cir.1993), *Fagan v. Washington*, 942 F.2d 1155 (7th Cir.1991), *D.S.A. v. Circuit Court Branch 1*, 942 F.2d 1143 (7th Cir.1991), *cert. denied*, 502 U.S. 1104, 112 S.Ct. 1196, 117 L.Ed.2d 436 (1992), *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128 (7th Cir.1990), *Page v. United States*, 884 F.2d 300 (7th Cir.1989), *United States v. Adamo*, 882 F.2d 1218 (7th Cir.1989), *United States ex rel. Thomas v. O'Leary*, 856 F.2d 1011 (7th Cir.1988), *Buelow v. Dickey*, 847 F.2d 420 (7th Cir.1988), *cert. denied*, 489 U.S. 1032, 109 S.Ct. 1168, 103 L.Ed.2d 227 (1989), *United States v. Queen*, 847 F.2d 346 (7th Cir.1988), *United States v. Gerrity*, 804 F.2d 1330 (7th Cir.1986), and *United States v. Liefer*, 778 F.2d 1236 (7th Cir.1985). *But see Clark v. Duckworth*, 770 F.Supp. 1316 (N.D.Ind.1991).

Calhoun alleges that his post-conviction counsel, Jonathan R. O'Hara was ineffective for failing to properly present his claim of ineffective assistance of trial counsel. Specifically Calhoun alleges error in the following areas.

a. Appellate counsel failed to sufficiently present the claim that trial counsel was ineffective for failing to introduce evidence of illegal bookmaking occurring in the barbershop to discredit the testimony of the witnesses.

b. Appellate counsel was ineffective for failing to communicate with Calhoun.

c. Appellate counsel was ineffective for failing to point out that the pathologist perjured himself.

d. Appellate counsel was ineffective because he failed to point out that the admission of testimony accusing Calhoun of threatening a witness lacked a sufficient foundation.

■ As to the illegal bookmaking, the claim is without merit. O'Hara adequately presented the issue to the Indiana Supreme Court where the issue was specifically considered and rejected. No minimum number of meetings are required in order for counsel to provide reasonably effective representation. *See, United States v. Olson,* 846 F.2d 1103, 1108 (7th Cir.1988), *cert. denied,* 488 U.S. 850, 109 S.Ct. 131, 102 L.Ed.2d 104 (1988). Although face to face meetings might be preferable, Calhoun's exhibits demonstrate that there was an open line of communication between himself and appellate counsel through the mail. Even if O'Hara was admittedly a "rookie", the case and the issues were not difficult. There was no question that Calhoun shot Johnson. The only question was, was it in self defense, or was it an accident? Calhoun was not prejudiced by the lack of face to face meetings.

■ Calhoun also says that appellate counsel failed to present sufficient arguments on the discrepancies of the autopsy report. The coroner's report failed to indicate that Johnson was bruised in the face where he was allegedly struck by Calhoun. However, at trial, the coroner testified orally that a bruise existed. Since the coroner was cross-examined about the discrepancy, (TR. at 267) there was little for an appellate counsel to say. The jury was entitled to discredit the testimony of the coroner but it did not. That is within the jury's discretion. There was no error as to the coroner's report.

■ Calhoun also criticizes appellate counsel for failing to investigate and present to the Indiana Supreme Court the ability of a person to hear and recognize the source of a threat being yelled from Lake County Jail window. *See e.g., Montgomery v. Petersen,* 846 F.2d 407, 412 (7th Cir.1988) (discussing in general the duties of counsel to investigate.) Apparently, someone had yelled threats to one of the witnesses of the shooting. Calhoun states that the investigation would have revealed that it was impossible that someone could hear threats from the window, and second, it was not him making the threats. However, the threatened witness testified that he was threatened and that he recognized the voice as Calhoun's.

Again, this was a credibility determination for the jury and there was no error here.

■ Finally, Calhoun criticizes appellate counsel for failing to point out that trial counsel's failure to either object to or to present additional evidence as to the character and criminal record of Johnson. In Indiana, a murder victim's criminal record has no relevance at trial. *Madison v. State,* (1971) 256 Ind. 353, 269 N.E.2d 164; *Teague v. State,* (1978) 269 Ind. 103, 379 N.E.2d 418; *Osburn v. State,* (1905) 164 Ind. 262, 73 N.E. 601. However, it may become relevant if self-defense is in issue.

> Proof of a homicide victim's character is generally prohibited. *Phillips v. State,* (1990), Ind., 550 N.E.2d 1290. If a defendant raises a self-defense claim, however, an exception is made. Evidence of the victim's character may be admitted for either of two distinct purposes: to show that the victim had a violent character giving the defendant reason to fear him or to show that the victim was the initial aggressor. *Id.*

> Evidence of specific bad acts is admissible to prove that the victim had a violent character which frightened the defendant. *Id.* However, only general reputation evidence of the victim's violent nature is admissible to prove that the victim was the initial aggressor. *Norris v. State,* (1986), Ind., 498 N.E.2d 1203, 1205. If the defendant wishes to introduce either type of character evidence, she must first introduce appreciable evidence of the victim's aggression to substantiate the self-defense claim. *Phillips,* 550 N.E.2d · at 1297. When offering specific bad acts evidence to prove the victim's violent character frightened her, the defendant must also provide a foundation showing that she knew about the specific bad acts in question before she killed the defendant. *Id.*

*Holder v. State,* 571 N.E.2d 1250, 1253–54 (Ind.1991). At trial, there was testimony that Johnson was a drinker and a sports fan but that "he never bothered nobody" (TR. at 293). Calhoun's Exhibit "F", submitted with his Memorandum in Support of Petition purports to be the criminal record of Johnson.

A look at the record certainly indicates that Johnson "bothered" many people in past years. However, Calhoun does not state that he was aware of the criminal record. Absent Calhoun's knowledge of Johnson's prior bad acts, Calhoun's counsel had no duty to introduce the criminal record into evidence, and appellate counsel had no duty to argue the issue on appeal. This court finds appellant counsel was not ineffective.

## B. PROSECUTORIAL MISCONDUCT

Calhoun's claims of prosecutorial misconduct center around the alleged use of perjured and fabricated testimony. Of course, the knowing use of such testimony is clearly prohibited by the Constitution. It is also clear however, that sometimes a witness's testimony will differ between what is said before trial and what is said after trial. While this may be indicative of an intent to deceive, it is also indicative of the fallibility of the human memory. To charge the prosecution with misconduct for every single instance of testimonial and evidentiary discrepancy would only substitute a disciplinary review panel for a jury. Therefore, Calhoun's attempt to characterize the discrepancies in the testimony of the coroner and the threats from the Lake County Jail window as prosecutorial misconduct is without merit.

Calhoun also charges the prosecutor with misconduct for allowing a witness to testify about the character of Johnson since the prosecutor knew that Johnson had a criminal record. Calhoun's objection is misplaced. The prosecutor did not testify about Johnson's character; therefore, his knowledge was irrelevant. The witness testified as to Johnson's reputation in the community. Regardless of past conduct, it is the prerogative of the community to have an opinion of Johnson that "he never bothered nobody". A prosecutor is not a member of the "thought police", it is not his job to tell the community what to believe. If Johnson had a reputation for being a harmless drunk, then it was no error for the prosecution to present that reputation. Moreover, Calhoun himself introduced evidence contrary to Johnson's reputation. Calhoun testified that Johnson had previously threatened him with a knife. (TR. at 503). The jury apparently

chose to give little weight to Calhoun's opinion of Johnson.

The prosecutor is again criticized for suggesting that Calhoun went to the barbershop so that he could rob it and for asking Calhoun if the witnesses were lying. Calhoun denied robbery motivated him to go to the barbershop and claims it was constitutional error for the prosecution to even suggest it. There was no constitutional error here. Although he objects to its admission in the present petition, Calhoun admitted on stand to having a history of armed robberies. He also obviously had a gun with him at the barbershop. Thus, the prosecution was entitled to inquire about Calhoun's motive in going to the barber shop. Calhoun was entitled to deny the motivation which he did. Moreover, Calhoun's objections to the admission of his pervious convictions are all objections to violations of state law. A review under § 2254 does not envision review of state law. *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). *See also, Ashton v. Anderson*, 258 Ind. 51, 279 N.E.2d 210 (1972). Finally, there was also no constitutional error in asking Calhoun if the witnesses were lying. The prosecution simply crystallized what the jury had to decide and whom they had to believe.

Perhaps the most objective comments were in regard to Calhoun's testimony about Johnson attacking him with a knife. After Calhoun testified that other people in the community knew that Johnson carried a knife, the prosecutor asked "Subpoena anybody here today?" whereupon the Judge immediately called counsel to the bench. After a conference out of the hearing of the jury, the prosecutor withdrew the question. Calhoun intimates that the prosecutor's question violates Calhoun's right against self incrimination as established by *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1961). "A prosecutor's comment ... on the failure of the defense to present evidence or call witnesses is improper under this standard where the defendant is the only one who could be called or who could rebut the evidence." *United States v. Butler*, 71 F.3d 243, 254 (7th Cir.1995); *United States v.*

*Sblendorio,* 830 F.2d 1382, 1391 (7th Cir. 1987), *cert. denied,* 484 U.S. 1068, 108 S.Ct. 1034, 98 L.Ed.2d 998 (1988); *United States ex rel. Adkins v. Greer,* 791 F.2d 590, 597 (7th Cir.), *cert. denied,* 479 U.S. 989, 107 S.Ct. 584, 93 L.Ed.2d 586 (1986); *United States ex rel. Burke v. Greer,* 756 F.2d 1295, 1300 (7th Cir.1985). By his own testimony Calhoun was not the only one that could have vouched for Johnson's reputation. A survey of the entire record reveals no prosecutorial conduct that "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1985) (*quoting, Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). There was no prosecutorial misconduct here.

### C. JUDICIAL MISCONDUCT

█ Calhoun alleges various allegedly erroneous rulings and prejudices by Judge Letsinger that have been grouped conveniently as "judicial misconduct". Calhoun's criticism with Judge Letsinger began even before the trial started. Prior to trial Calhoun requested a Change of Venue from the Judge. (TR. at 32–33). Calhoun had previously appeared before Judge Letsinger in a previous jury trial and Calhoun believed that Judge Letsinger would be prejudiced from the previous trial. Judge Letsinger denied the motion stating it lacked sufficient evidence to show cause for the removal. (TR. at 34). Calhoun continues to believe that Judge Letsinger was prejudiced and therefore argues he was denied a fair trial. Prejudice is not established by only showing that the defendant had appeared before the judge in a separate matter. Calhoun must allege specific facts about the prejudice, and absent those facts, there was no error in denying the motion to change judges. *See e.g., McChristion v. Hood,* 551 F.Supp. 1001 (N.D.Ind.1982). *See also, Brim v. State,* 471 N.E.2d 672 (Ind. 1984) *Clemons v. State,* 424 N.E.2d 113 (Ind. 1981).

█ Calhoun also alleges that the judge violated his constitutional right *not* to have a jury trial. Calhoun attempted to waive his right to a trial by jury but the State opposed the waiver and sought to enforce its statutory right to trial by jury. (TR. at 44). Judge Letsinger was correct in his ruling. There is no constitutional right to a trial by a judge. *Singer v. United States,* 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965). "The ability to waive a constitutional right does not ordinarily carry with it the right to insist upon the opposite of that right." *Faretta v. California,* 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975) (*citing Singer,* 380 U.S. at 34–35, 85 S.Ct. at 789). Calhoun's claim in this issue is without merit.

█ Finally, Calhoun claims that the trial judge created reversible error when he showed alleged astonishment at the fact that Calhoun had been in his court about two years previously on a robbery charge and that he sentenced Calhoun to ten years in prison. The alleged error occurred on pages 506–507 of the trial record while Calhoun was on cross-examination.

> By Prosecution: And you are the same Charles Calhoun, Jr. are you not, who in July of 1980, in this very courtroom for the same judge was sentence to ten (10) years in the state prison for attempting to commit robbery while armed with a deadly weapon?
>
> Calhoun: Yes, I was.
>
> By the Court: Is that 1980?
>
> By Prosecution: Yes, your Honor, it is.
>
> By the Court: What?

At that point a sidebar conference was held whereupon the prosecution explained that the 1980 trial was a retrial of a 1975 or 76 conviction that had been overturned on post-conviction relief. Upon a second conviction in the retrial, Calhoun was entitled to credit for time already served under the vacated conviction. The amount of credit was such that the ten year sentence was considered "served" at the moment it was imposed. (TR. at 507).

Calhoun argues that Judge Letsinger's reaction to the fact that Calhoun was sentenced by him only two years ago constituted reversible error. Specifically, Calhoun alleged, "[t]he trial court interrupted the highly prejudicial cross examination of petitioner, and expressed its displeasure when the jury was

told petitioner was tried before his court, two (2) years prior and was sentence to ten (10), in 1980". *Calhoun's Memorandum in Support of Petition*, p. 21. There is no error here. It is simply an example of an alert judge. Any judge would inquire as to how a defendant that they had two years ago to a ten year prison was now appearing before them on a charge implying that the ten year sentence was not served. To his credit, the judge did not emphasize the fact that Calhoun had been in his courtroom within the past two years. An explanation would have simply reinforced that fact with the jury. The judge made his appropriate inquiry and kept the trial moving. As to any other allegations of improper behavior by the judge, this court finds them without merit. Judge Letsinger's comments and conduct did not deny Calhoun a fair trial.

### D. OMISSION OF TRIAL RECORD

█ Calhoun alleges that a portion of the trial record was omitted, but he does not specify which part of the record is missing, nor the prejudice arising therefrom. However, this court assumes that Calhoun is referring to his allegation that portions of Benjamin Angelo Brown III's police statement were knowingly omitted by the prosecution at trial. A comparison of the document used at trial and Calhoun's Exhibit "G" reveals that Benjamin's trial statement failed to include a portion where Benjamin stated Johnson said, " 'I got something for you.' He then reached down in his coat with his right hand and was digging down in his coat pocket." Those portions are missing, but a review of the trial transcript shows that the missing information was presented to the jury in the form of testimony. (TR at 388). The testimony presented the hook (the reaching into the pocket), upon which Calhoun sought to hang his claim of self-defense upon. The jury simply didn't buy the defense. Moreover, there is no evidence to show that part of the statement was excluded on purpose. Indeed, since the missing portions appear at the very bottom of the page, it is likely that they were a victim of negligent enlarging, not intentional conduct. The witness was there at trial and was cross examined about Johnson said and what was in Johnson's coat pocket. Nothing of Constitutional magnitude was created by the omission of portions of the police statement.

## V. CONCLUSION

Although his petition was not subject to the procedural bars of "failure to exhaust state remedies" and "procedural default", Calhoun's petition must still be dismissed as he is not entitled to relief on the merits of the issues he presented. The petition is hereby **DENIED** and clerk shall enter judgment accordingly. Copies of this decision to the parties and those appearing below.

**IT IS SO ORDERED.**